IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 18, 2003

## STATE OF TENNESSEE v. CHRISTOPHER TODD WHITAKER

**Direct Appeal from the Criminal Court for Washington County**
**No. 27483 & 28021     Robert E. Cupp, Judge**

_____

**No. E2003-00817-CCA-R3-CD**
**December 23, 2003**
_____

The Washington County Grand Jury indicted the Defendant, Christopher Whitaker, for three counts of robbery, and one count of theft valued over $500. The Defendant pled guilty to all four counts. Following a sentencing hearing, the trial court denied the Defendant's request for alternative sentencing and sentenced the Defendant to serve six years in prison. The Defendant appeals, contending that the trial court erred when it denied his request for alternative sentencing. Finding no reversible error, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JERRY L. SMITH, JJ., joined.

Deborah Black Huskins, Johnson City, Tennessee, for the appellant, Christopher Whitaker.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Elizabeth B. Marney, Assistant Attorney General; Joe Crumley, District Attorney General; Steve Finney, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

The Defendant was indicted for, and pled guilty to, three counts of robbery, Class C felonies, that occurred between August 17 and August 31, 2001, and one count of theft of property valued over $500, a Class E felony that occurred in June of 2002. At the hearing on the Defendant's guilty plea, the Defendant testified that he was "on some drugs" at the time of the crimes and that, due to his drug addiction, the Defendant "went up and grabbed [the] pocketbook" of three women on three different occasions and, on the fourth occasion, took a pocketbook from a grocery cart. The Defendant requested alternative sentencing, and the trial court set a hearing date to determine the

Defendant's sentence.[1]

At the sentencing hearing, the Defendant's father, Kyle Whitaker, testified that his son had been active in the family-operated roofing business for five or six years and shared in the profits of that business. Kyle Whitaker stated that he was aware that the Defendant was suffering from marital difficulties as a result of his crimes, and subsequent prosecutions for those crimes and that, if the trial court granted the Defendant alternative sentencing, he was willing to have the Defendant reside in his home. Kyle Whitaker testified that he was also willing to report his son if he caught him using drugs or violating any of the terms of his sentence.

The Defendant testified that he had multiple previous convictions, which included convictions for driving on a suspended license, writing bad checks, vandalism and domestic assault. The Defendant expressed his remorse and took responsibility for his drug addiction.

Before making its finding, the trial court reviewed the Defendant's record, noting that the Defendant had been arrested eleven times for driving on a revoked or suspended license and that each time the offense was reduced to "No Driver's License" and fined only $25.00. Additionally, the trial court noted that the Defendant had a seat belt violation and a violation for operating an unregistered vehicle, for which there was still a "capias out" on him. Further, the trial court noted that the Defendant had multiple convictions for writing bad checks, including one on February 5, 2001, for which he still owed $1,876.17. On February 23, 2001, the Defendant committed vandalism, and he never paid the $173.48 in court costs that he owed. On that same date, the Defendant committed a domestic assault and was, as a result of the assault, ordered to serve six months of supervised probation. Two months later, on April 11, 2001, the Defendant again wrote bad checks totaling $835.65, and the Defendant paid no restitution on that charge. While on probation for the domestic assault and bad checks, the Defendant committed three robberies between August 17 and August 31, 2001. On August 29, 2001, the Defendant committed the offense of Possession of Drug Paraphernalia and was given a fine of $150.00, which is still unpaid. On the same date, the Defendant was in Possession of Schedule VI drugs, and the court ordered that he attend drug and alcohol counseling. While on bond for the robberies, on June 8, 2002, the Defendant committed theft of property valued over $500.

The trial court stated that the Defendant had only made one payment to the court, and that was in June of 2002, for $40.00. The Defendant owed General Sessions Court $9,158.86, none of which he had paid, despite the fact that he was earning $1,000 per month at his job.

The trial court included in the record the victim's impact statement. One victim said, in a letter to the court, "I just sit and cry. I had a bad knee. I could hardly walk. A man saw him get my purse and my police friends brought me home. He did not try to hurt me, just grabbed my purse and jumped in his car. He took all my money, which is the payment on my loan." Before making its

---

[1]The Defendant also requested release on probation bond pending the alternative sentencing hearing, which was denied, and requested in-patient treatment at Magnolia Ridge, which was denied.

holding, the trial court reviewed the sentencing factors, stating:

> And what I see . . . is time after time after time [the charges] . . . are reduced and reduced and reduced. It doesn't do any good. He serves some time in jail from November, I think, till February, gets out, and . . . he goes right back to his old ways and steals again. . . . [When you look at the statute] it says you should restrain defendants with a lengthy criminal history or criminal conduct. He does have a history of criminal conduct and it is lengthy for his age. "Encouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants." The question is, Can you rehabilitate him . . . . And encouraging restitution to victims is a waste of time with him. He doesn't make restitution for all those cases and bad checks he's got. There's no question he's entitled to the presumptive – he's a favorable candidate, there's no question about that, in the absence of evidence to the contrary. And then you look at that, "(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct . . . . (B) Confinement is necessary to avoid depreciating the seriousness of the offense." You go out and you steal from women. You steal their pocketbooks. You know, it's – four (4) times he did that, three (3) times and then one time while he was on bond for those. "Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." That's true. The record shows it. It's also true when you look at the three (3) purse deals, the robberies. That's confinement. That didn't do him a bit of good. He got out and went right back to his old ways within a heartbeat. "The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative." . . . . [W]hen it's ordered [for the defendant to attend rehabilitation], while he's on probation, he's still [using] drugs.

The trial court found that two enhancement factors applied to the Defendant. First, the trial court found that the Defendant had a previous history of criminal convictions, and second, it found that he had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. The trial court found one applicable mitigating factor, that the Defendant's conduct neither caused nor threatened serious bodily injury. Thereafter, the trial court determined that the enhancing factors "far outweighed" the mitigating factors and that the Defendant was not eligible for alternative community corrections. Further, the trial court stated that the Defendant "never has ever abided by the terms of any probation," and so the trial court denied probation in "[t]he interests of society [so it is] protected from future possible criminal conduct of this [D]efendant." The trial court denied any form of alternative sentencing and ordered the Defendant to serve his sentence, six years at 30% in confinement.

The Defendant appeals, contending that the trial court erred when it denied him alternative sentencing.

## II. Analysis

When a defendant challenges the length and manner of service of a sentence, it is the duty of this court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.

Tennessee Code Annotated section 40-35-103(1) (2003) states that:

Sentences involving confinement should be based on the following considerations: (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct; (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant; . . . .

Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). The trial court may consider enhancing and mitigating factors when determining a defendant's sentence. Enhancing factors include the following: "The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range" and "The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community." Tenn. Code Ann. § 40-35-114 (2003). Mitigating factors include "The defendant's criminal conduct neither caused nor threatened serious bodily injury." Tenn. Code Ann. § 40-35-113(1) (2003).

In the present case, we find that the trial court considered all relevant evidence and so stated on the record. Moreover, as the trial court found, the record reflects that the Defendant has an extensive history of criminal conduct, that he has not been rehabilitated by his previous incarcerations, and that confinement is necessary to protect the interests of society. See Tenn. Code Ann. § 40-35-103(1)(A)-(C). Further, the trial court found two applicable enhancing factors and one applicable mitigating factor and then determined that the enhancing factors outweighed the mitigating factors. The record fully supports the trial court's findings and its determination denying the Defendant an alternative sentence. The Defendant has not met his burden of demonstrating the impropriety of the trial court's denial of alternative sentencing.

### III. Conclusion

After review of the issue before us, we conclude that the Defendant has failed to establish that his sentence was improper. Accordingly, the judgments of the Washington County Criminal Court are AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE