IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 4, 2009

## STATE OF TENNESSEE v. ROBERT J. LEWELLEN

**Direct Appeal from the Circuit Court for Madison County**
**Nos. 08-236, 08-310    Donald H. Allen, Judge**

---

**No. W2008-02013-CCA-R3-CD  - Filed September 16, 2009**

---

The defendant, Robert J. Lewellen, pled guilty in two different cases to nineteen counts of burglary, thirteen counts of theft, five counts of vandalism, and one count of fraudulent use of a credit card and was sentenced to sixteen years, suspended to probation after service of twenty-four months in jail.  On appeal, he argues that the trial court's imposition of an effective sixteen-year sentence was excessive.  After review, we remand for entry of a judgment in Count 20 of Case Number 08-310 and for entry of a corrected judgment in Count 22 of Case Number 08-310.  We affirm the judgments of the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed and
Remanded for Entry of Corrected Judgments**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Gregory D. Gookin, Assistant Public Defender, for the appellant, Robert J. Lewellen.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

Linked to a rash of church break-ins, the defendant and Christopher Lee Maggard were indicted in Case Number 08-236 on ten counts of burglary, six counts of theft of property, and eight counts of vandalism.  In Case Number 08-310, the defendant and Maggard were indicted on nine counts of burglary, seven counts of theft of property, six counts of vandalism, and one count of fraudulent use of a credit card.

On June 23, 2008, the defendant[1] pled guilty to ten counts of burglary, six counts of theft, and three counts of vandalism in case 08-236, and five of the other vandalism counts were dismissed. In case 08-310, he pled guilty to nine counts of burglary, seven counts of theft, two counts of vandalism, and one count of fraudulent use of a credit card. Four of the other vandalism counts were dismissed.

The trial court conducted a sentencing hearing on August 4, 2008, at which representatives from most of the victimized churches testified about the damage sustained by their churches from the crimes in these cases.

Stephanie Caple, director of the child care center at Westover Baptist Church, testified that the defendant burglarized the church on two occasions, taking a guitar and some money. The church sustained a financial loss of $1000 for the insurance deductible.

Marie Blackwell, secretary-treasurer at Parkview Baptist Church, testified that the church suffered a loss of $3900 due to three broken doors and two stolen laptop computers. The church had not filed an insurance claim but anticipated doing so.

David Graves of the Landmark Church testified that a large screen televison and its mounting bracket were stolen from the church. The television was recovered by the sheriff's department, but the mounting bracket, which cost $129, was not.

Jerry Barker, pastor of Parkburg Baptist Church, testified that the damage sustained by the church totaled $6389, which included six broken doors, damage to a wall, and money taken from collections. However, the church filed an insurance claim, so the actual loss was the $1000 deductible.

Ann Harris, secretary of Brown's United Methodist Church, testified that a safe was completely destroyed, and six t-shirts with the church emblem and a small amount of cash were stolen. A small knife belonging to the pastor was also taken. The church sustained an actual loss of $437.

Travis Grimsley, pastor of New Life Tabernacle Church, testified that a guitar, an amplifier, a safe, and approximately $300 from collections were stolen from the church. The defendant also vandalized the church by breaking doors and spraying a fire extinguisher throughout the church and on several musical instruments. The church was waiting to see if any items were recovered before filing an insurance claim, but the damage amounted to approximately $2000.

Wayne Brown, business administrator of Englewood Baptist Church, testified that the defendant burglarized the church on two occasions. Several key boxes were stolen, causing the church to have the entire building re-keyed. A tool kit, two safes, the church credit card, $130 cash,

---

[1] This appeal concerns only the defendant.

and a laptop computer were stolen. A large safe was damaged beyond repair, and one door was damaged. The church suffered a loss of $7979.19, which included the cost of re-keying the building. The church's insurance deductible is $2500, but the church had not yet chosen to file a claim. A set of keys to the Coke machine was recovered.

Sara March, an employee of Macedonia Baptist Church, testified that the church sustained damage to the pastor's office door, the financial office, a safe, the choir stand, and the baptism pool. Church members repaired damage to the ceiling and the hole in the baptism pool.

Prentice Woods, one of the pastors and the business administrator of Family Worship Center, testified that nine doors were broken into and "trashed," the Coke machine was damaged, and various equipment was taken. A couple of the small items had been recovered. The church sustained an actual loss of $2500 for the insurance deductible.

Lindsey White, a member of Aldersgate United Methodist Church, testified that a door was "jimmied," but nothing was taken or damaged inside. White noted that the church was actually broken into three times.

Thomas Simpson, youth pastor of Northside Assembly, testified that five doors were damaged, $1300 was taken, two safes were destroyed, a large flat screen television was taken, and there was structural damage to the wall around one of the safes. No property had been returned. The church sustained a loss of the $500 insurance deductible. Simpson said that the defendant had been active in the youth ministry in the past and was a "good boy[]" when he was in church.

Thomas Ralston, senior minister at First Christian Church, testified the defendant burglarized the church twice. The Coke machine and two desks were damaged. A laptop, power tools, and some petty cash were stolen. Keys to the building and a projector had been recovered. The church sustained actual damages in the amount of $2668.20, and it did not file an insurance claim. Ralston testified that the defendant had attended the church "all of his life" and was attending "[s]poradically" at the time of the burglaries. Ralston said that the defendant was well-behaved when he was younger, and his parents continued to attend the church.

Lieutenant Melinda Wyatt testified that she developed the defendant as a suspect in the church break-ins after receiving a Crime Stopper's tip. The defendant was brought to the police station for questioning and was not cooperative in the beginning. She recalled that he "admitted to being present when the credit card was compromised at the bank where they took a photograph of both of them standing there," but otherwise he "didn't know anything about anything." The defendant's girlfriend later told the officers that the defendant had given her some items for safekeeping because "he was fearful that they may disappear because of where he was living at." Officers identified the items as some of the property taken from the various churches.

Lieutenant Wyatt testified that, after speaking to the defendant's girlfriend, the officers talked to the defendant again and he was cooperative. The defendant gave a formal statement admitting

his and Christopher Maggard's involvement. She recalled that the defendant said they broke into the churches because they "wanted the money. They just wanted to be able to do things and go places and buy things." The decision to burglarize the churches was a mutual decision between the defendant and Maggard. Officers recovered a large screen television from the defendant's bedroom that he shared with his girlfriend at the home of Maggard's brother. A guitar, amplifier, and laptop computer were also recovered from that house.

Robert H. Lewellen, the defendant's father, testified that the defendant graduated from high school and attended one semester at Austin Peay State University. The defendant had worked "pretty consistently" since the age of sixteen or seventeen in construction and landscaping. The defendant helped take care of his mother after she had a stroke. At some point, the defendant moved out of his parents' home and moved in with Christopher Maggard and others. Lewellen suspected that the defendant was using cocaine or other drugs. Lewellen acknowledged that in November 2007, the defendant was arrested and charged with theft of property from Wal-Mart and received probation. He said that the defendant was not involved in thefts or burglaries until he moved out. Lewellen said that the defendant had expressed remorse for the crimes in this case, and he brought letters of support from members of First Christian Church.

Steven Hardin, the defendant's brother, testified that if the defendant were released, he could work for his landscaping company.

The twenty-year-old defendant testified that he left college after a semester because he did not have the money to pay for it. He stated that he had various jobs in the past and was working two jobs when he was arrested. He acknowledged that he initially denied involvement in the cases at hand but admitted his involvement when confronted with his girlfriend's statement. The defendant said that he is willing to work when released and is remorseful for his actions. He explained that it was easier to break into churches than to earn and save money.

The defendant admitted to drinking alcohol, smoking marijuana, using cocaine, and taking Hydrocodone and Xanax "afterward[] and before[]" the time of the burglaries. He said that the influences at Maggard's brother's house were not as positive as those at his parents' house. He stated that he was willing to pay restitution, attend drug rehabilitation, and undergo drug testing if required by the court.

On cross-examination, the defendant testified that it was his co-defendant's brother's idea to break into the churches, and that he was with them during each break-in. The defendant admitted that the brother did not force them to go but "manipulated [them] into going most of the time." He explained that the brother told them that a church is "the one place that's usually unsecure. The people will forgive you. They leave money lying around." He said that the brother was the one who primarily picked out which churches to rob.

The defendant testified that he first consumed alcohol at the age of thirteen or fourteen and did so approximately three times a week. He said that he smoked marijuana "[e]very time [he] got

a chance" but started using cocaine only recently, doing so once or twice a week. Around the time he started using cocaine, he also started taking Hydrocodone and Xanax, which he got from his co-defendant's brother. The defendant admitted that he had been convicted of misdemeanor theft of property on November 9, 2007, for which he received probation or some type of diversion. He acknowledged that he started committing the offenses in the cases at hand the following week and was reporting to his probation officer during those time periods.

The defendant acknowledged that he had been stopped for speeding a couple of times and had been arrested for having marijuana at school when he was a juvenile for which he had to attend an alternative school for six months. On redirect, the defendant said that he had written letters of apology to seven or eight of the churches. The defendant stated that the driving offenses indicated on his presentence report had all been resolved or dismissed. Asked by the court what he did with the stolen property, the defendant said that "[m]ost of the property that wasn't recovered was taken away by [the co-defendant's brother]."

## ANALYSIS

The defendant challenges the sentence imposed by the trial court, asserting that his sentence was "grossly excessive to the criminal conduct" and not the least severe measure necessary to achieve the purposes of sentencing.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses, (h) any statements made by the accused in his own behalf, and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

In imposing a specific sentence within a range, a trial court "shall consider, but is not bound by" certain advisory sentencing guidelines, including that the "minimum sentence within the range of punishment is the sentence that should be imposed," and that "[t]he sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors[.]" Tenn. Code Ann. § 40-35-210(c)(1), (2). The weighing of the various mitigating and enhancement factors is "left to the trial court's sound discretion." State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008).

Tennessee Code Annotated section 40-35-115(b) provides that it is within the trial court's discretion to impose consecutive sentencing if it finds by a preponderance of the evidence that any one of a number of criteria applies, including that "[t]he defendant is an offender whose record of criminal activity is extensive" or that "[t]he defendant is sentenced for an offense committed while on probation[.]" Tenn. Code Ann. § 40-35-115(b)(2), (6) (2006).

In sentencing the defendant, the court enhanced the defendant's sentence based on his previous history of criminal convictions or criminal behavior and the crimes were committed while he was on probation. The court gave the enhancement factors great weight. As for mitigating factors, the court found that the defendant's conduct did not cause or threaten serious bodily injury, he admitted his involvement, and he cooperated with law enforcement in trying to apprehend other participants and attempting to recover the stolen property. The court determined that the appropriate sentence was four years for the Class D felony convictions, two years for the Class E felony convictions, and eleven months, twenty-nine days for the misdemeanor convictions.

The court found that consecutive sentencing was appropriate given that the defendant was an offender whose record of criminal activity is extensive and he committed the offenses while on probation in another case. Accordingly, the court ordered that Counts 1, 2, 4, and 5 in Case Number 08-236 and Counts 7, 8, 10-13, 15, and 16 in Case Number 08-310 be served concurrently with each other, for an effective term of four years, but consecutively to the other groups. Counts 6 and 8-11 in Case Number 08-236 and Counts 1, 2, and 4-6 in Case Number 08-310 were ordered to be served concurrently to each other, for an effective term of four years, but consecutively to the other groups. Counts 12, 13, 15-20, 22, and 23 in Case Number 08-236 and Counts 17 and 18 in Case Number 08-310 were ordered to be served concurrently to each other, for an effective term of four years, but consecutively to the other groups. Counts 19-22 in Case Number 08-310 were ordered to be served concurrently to each other, for an effective term of four years, but consecutively to the other groups. As such, the court imposed an effective sentence of sixteen years.

The court also ordered restitution and ordered that the defendant publicly apologize to and perform community service work for each of the victimized congregations. The court found that some period of incarceration was appropriate under the circumstances and ordered that six months of each sentence, a total of twenty-four months, be served in jail with the remainder on probation. The court ordered that the sentences in these cases be served consecutively to a ninety-day sentence imposed by the Jackson City Court. The court observed that it believed the defendant was truly remorseful for his actions.

Upon review, we discern no abuse of discretion in the sentences imposed by the trial court. The record shows that the defendant pled guilty to theft on November 9, 2007, in the Jackson City Court and was granted probation with the opportunity to have his record expunged. However, the defendant, instead, proceeded to engage in a break-in spree of sixteen churches in a three-month period while on probation from that case. The trial court clearly acted within its discretion in enhancing the defendant's sentence based on his prior record, Tenn. Code Ann. § 40-35-114(1), and that he committed the present offenses while on probation. Id. § 40-35-114(13). Moreover, the court also acted within its discretion in ordering consecutive sentences based on the extensiveness of the defendant's criminal activity, id. § 40-35-115(2), and that he committed the present offenses while on probation. Id. § 40-35-115(6). We note that this court has held that a trial court may consider the offenses for which a defendant is being sentenced in determining whether the defendant has an extensive record of criminal activity for consecutive sentencing purposes. See State v. Daryl Adrian Benjamin Ingram, No. W2002-00936-CCA-R3-CD, 2003 WL 721704, at *3 (Tenn. Crim. App. Feb. 26, 2003), perm. to appeal denied (Tenn. Sept. 2, 2003).

Although one of the burglaries occurred one week before the defendant pled guilty in the city court case, a single enhancement factor may justify an enhanced sentence, see, e.g., State v. Eric D. Charles, No. W2007-00060-CCA-R3-CD, 2008 WL 246023, at *6 (Tenn. Crim. App. Jan. 30, 2008), as will the existence of a single criterion from Tennessee Code Annotated section 40-35-115 support a consecutive sentence. The record shows that the trial court thoroughly considered the principles and purposes of sentencing. Given the magnitude of the defendant's criminal activity, we cannot conclude that the trial court imposed an excessive sentence.

## CONCLUSION

Upon review, we remand for entry of a judgment in Count 20 of Case Number 08-310. We also remand for entry of a corrected judgment in Count 22 of Case Number 08-310. Although the indictment for this count charged the defendant with theft over $500, a Class E felony, and the guilty plea petition indicated that the defendant intended to plead guilty to this offense, the judgment for this count indicates that the defendant was charged with and pled guilty to the misdemeanor offense of theft under $500. We affirm the judgments of the trial court in all other respects.

_____
ALAN E. GLENN, JUDGE