IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 8, 2009

## STATE OF TENNESSEE v. RONALD STEPHEN BLODGETT

**Appeal from the Circuit Court for Marshall County**
**No. 08-CR-146     Robert Crigler, Judge**

---

**No. M2009-01178-CCA-R3-CD - Filed December 17, 2009**

---

The defendant, Ronald Stephen Blodgett, entered an open plea of guilty in the Marshall County Circuit Court to the offense of driving after being declared a habitual motor vehicle offender, a Class E felony. The trial court sentenced the defendant to six years in the Tennessee Department of Correction as a career offender. On appeal, the defendant argues that the trial court should have ordered that he serve his sentence in community corrections. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Michael J. Collins, Assistant Public Defender, Shelbyville, Tennessee, for the appellant, Ronald Stephen Blodgett.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The State recited the underlying facts of the case at the defendant's guilty plea hearing as follows:

These events occurred in Marshall County, Tennessee on the 22nd day of September, 2008.

At that time there was an habitual motor [vehicle] offender order out of the Circuit Court of Maury County, docket number 14871, that had been signed by the Court and it shows that the defendant appeared pro se on that on November 2nd, 2009 (sic.)

The clerk would be prepared to say that that order had never been set aside.

Angela Simpson, on that day was proceeding down Highway 99 near the Breeze In Market behind a truck and a horse trailer when a vehicle pulled out of Verona Road and failed to make the stop and stopped in the middle of the street blocking both lanes of traffic.

She would testify that the car backed up, made a wide turn in the street and headed toward the Highway 41-A or Nashville Highway.

The car passed by her and she saw two individuals in the car. One was a male and that was the driver. The other was a light-haired female.

She proceeded on in her direction of travel which was toward 431. In a few moments she arrived home and her acquaintance, Lou Branson, was not home where she expected him to be. There was telephone communication and Mr. Branson said he was pulling a vehicle out of a dirt area near where she had observed the vehicle pull out of. It's Caney Springs Road area.

He described the vehicle and the individuals that were in the car and she said, well, that matches the vehicle that ran the stop sign in front of me and we had to stop and swerve.

And so he had observed that the individual that was driving the automobile was -- appeared to be intoxicated. He called law enforcement.

And two officers arrived. First Chad Grissom from Chapel Hill Police Department and then Chad Bass, who is seated here beside me, from the Marshall County Sheriff's Department.

They observed the defendant. They spoke to the defendant.

The defendant told them that he had been in the car, but someone else was driving. They tried to p[i]n him down a little bit more on that, and he said -- the only name he could give them was Junior.

Then he did also tell them it was his vehicle.

Then Cheryl Planer would testify. She was the female in the car that Ms. Simpson had seen in the passenger seat. She would come in here today testifying that the defendant was the driver of the vehicle that pulled out of the stop sign there from Verona to New Cut 99, and she would also testify that he was driving when it went off into the grassy area . . . .

At the sentencing hearing, Probation Officer James Grimes testified that he prepared the defendant's presentence report. The report revealed that the defendant has over thirty previous felony and misdemeanor criminal convictions, including multiple driving under the influence, public intoxication, traffic offenses, and driving on a suspended license or as a habitual traffic offender convictions. The report also showed convictions for, among other things, felony escape, theft, shoplifting, and possession of drugs and drug paraphernalia. Officer Grimes also discovered that the defendant had a burglary conviction in Michigan. He stated that the defendant had a previous sentence of probation revoked in 2005 and a previous community corrections sentence revoked in 2006. The defendant also committed multiple offenses while on bond in the present case. On cross-examination, Officer Grimes stated that the defendant reported that he is financially responsible for two children, helps his mother and stepfather due to their medical problems, and has worked in construction for twenty-three years.

Randall Wolfe, the defendant's stepfather, testified that he has numerous medical conditions, and the defendant helps him with shopping and household chores. Patricia Wolfe, the defendant's mother, testified that she has fibromyalgia and needs the defendant's help around the house.

The defendant testified to the circumstances surrounding some of his previous convictions. In particular, he said that the escape charge was the result of his injuring his leg and falling asleep while on work release. The defendant reiterated the testimony of his family that he assists them around the house.

## ANALYSIS

The defendant argues that the trial court should have imposed a sentence of community corrections rather than incarceration.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871

S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses; (h) any statements made by the accused in his own behalf; and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6) (2006)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6)(A) (2006).

To qualify for consideration for punishment in the community, an offender must meet all of the following criteria:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related, or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (C) Persons who are convicted of nonviolent felony offenses;
>
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]
>
> (F) Persons who do not demonstrate a pattern of committing violent offenses[.]

Tenn. Code Ann. § 40-36-106(a)(1).

Alternatively, the "special needs" provision provides that an offender may be considered eligible for community corrections, even if usually considered unfit for probation, if he has a history of chronic alcohol or drug abuse, or mental health problems, but his special needs are treatable and could be served best in the community instead of in a correctional institution. Id. § 40-36-106(c).

A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Id. § 40-35-103(1) (2006). Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Id. § 40-35-103(5).

As a career offender, the defendant was not considered a favorable candidate for alternative sentencing, and the trial court imposed a mandated sentence of six years for his Class E felony conviction. With regard to alternative sentencing, the court found that confinement was necessary to protect society from a defendant with a long history of criminal conduct, to avoid depreciating the seriousness of the offense, and because measures less restrictive than confinement had frequently and recently been applied unsuccessfully to the defendant. The court found that any of the factors individually would be sufficient to deny alternative sentencing.

The defendant argues that he is entitled to a sentence of community corrections under both subsections (a) and (c) of Tennessee Code Annotated section 40-36-106 because he meets all of the statutory criteria and needs help with his alcohol addiction. Assuming, arguendo, that the defendant satisfies the requirements for community corrections, it does not necessarily follow that community corrections is the most appropriate sanction in this case. Tennessee Code Annotated section 40-36-106 establishes only the eligibility requirements for community corrections. It does not create an entitlement of freedom from confinement. The trial court retains the discretion to impose incarceration in appropriate cases.

In this case, the record supports the trial court's imposition of a sentence of confinement. We first note that the trial court's reliance upon the "avoid depreciating the seriousness of the offense" factor was improper because this offense was not "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the circumstances

of this offense do not outweigh all other factors. <u>See</u> <u>State v. Fields</u>, 40 S.W.3d 435, 441 (Tenn. 2001) (citations omitted). However, the record shows that the defendant has a criminal record dating back to 1983 that includes twenty-two misdemeanors and twelve felonies, some of which were committed while on bond in the present case. The record also shows that the defendant's potential for rehabilitation is low in that he has repeatedly been granted a suspended sentence, yet he continues to commit offenses. He has suffered revocations of a sentence of community corrections and probation in the recent past. Moreover, he has failed to prove that his alcohol addiction could be better treated in the community rather than in an incarcerative setting. Thus, the trial court's imposition of a sentence of confinement is fully supported by the record.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE