# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 8, 2009

## STATE OF TENNESSEE v. ROY ROWE, JR.

### Direct Appeal from the Circuit Court for Marshall County
### Nos. 08-CR-175 & 08-CR-2      Robert Crigler, Judge

---

### No. M2009-00943-CCA-R3-CD - Filed March 31, 2010

---

The Defendant, Roy Rowe, Jr., pled guilty to seventeen counts of sale of a controlled substance, and, after merging several of the counts, the trial court sentenced him as a Range I offender to an effective sentence of six years. The trial court imposed a split sentence, ordering that the Defendant serve 365 days in the county jail, with the remainder of his sentence to be served on probation. On appeal, the Defendant contends that the trial court erred when it enhanced his sentence to the maximum within the range. After reviewing the record and applicable authorities, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Michael J. Collins, Lebanon, Tennessee, for the Appellant, Roy Rowe, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Lindsy Paduch Stempel, Assistant Attorney General; Charles Crawford, District Attorney General; Weakley E. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

During the Defendant's plea submission hearing, the State set forth the following summary of the conduct underlying this appeal:

In all of the cases that I will be describing to the Court are cases that were

made by the 17th Judicial District Drug Task Force and their standard operating procedure was followed in each of those cases in that they met with a confidential informant. That informant was searched. That informant was provided with confidential funds. That informant was wired with a transmitter so that the agents of the 17th Judicial District could monitor any transactions in real time and also with an audio tape recording device.

On November 29 of '07, transactions did take place with this defendant. And they are the subject to 08CR175 in which Alprazolam and Diazepam were purchased.

Those tablets were sent to the TBI crime lab and, in fact, were verified as being as I just described them.

Also on November 29, '07, ten tablets of Dihydrocodeine were purchased from the [D]efendant in the manner that I just described. They were sent to the crime lab and verified as being such.

On December 6, '07, 19 tablets of Alprazolam were purchased from the [D]efendant and sent to the crime lab. Subsequently verified that that's what they were.

On December 18, '07, six tablets of Meperidine, two of Dihydrocodeine, and two of Alprazolam. Again, sent to the crime lab and verified as being such.

Then on January 7th of this year, 20 tablets of Dihydrocodeine. And on the 22nd of January of this year, Meperidine was purchased from the [D]efendant.

After each of these purchases, the confidential informant was debriefed, searched to make sure that there was no pocketing of any drugs and/or confidential funds, and all of these transactions were recorded on audio tape and reflect those transactions.

Based upon this conduct, the Defendant pled guilty to two counts of Sale of a Schedule II Controlled Substance; two counts of Delivery of a Schedule II Controlled Substance; three counts of Sale of a Schedule III Controlled Substance; three counts of Delivery of a Schedule III Controlled Substance; three counts of Sale of a Schedule IV Controlled Substance; and four counts of Delivery of a Schedule IV Controlled Substance.

The following evidence was presented at the Defendant's sentencing hearing: After the presence report was admitted into evidence by the trial court, Terese Fraser, who authored the report, testified. Fraser, who worked for the Tennessee Probation and Parole Department, said the Defendant, a fifty-one year old man, reported to another probation officer that he had sold Lortab, Mepergan, and Xanax. Although he admitted to selling drugs on twelve or thirteen occasions over a six-month period, he was only charged with selling drugs on six occasions. The Defendant said he also sold drugs to a Lewisburg city police officer on ten to twelve occasions.

The Defendant reported that he was seeing one doctor in Alabama and that Medicare and TennCare paid, at least in part, for his medications. He said he sold drugs to supplement the $752 per month he received in Social Security benefits.

Fraser testified that the Defendant had previously been charged with selling drugs on January 25, 2008, and he pled guilty to this charge on February 18, 2009. The Defendant did not report to serve his sentence, and he was indicted on a charge of failure to appear. That charge was still pending at the time of the sentencing hearing. The Defendant had not worked since Bobby White Motors terminated him in 1994 for sleeping on the job.

On cross-examination, Fraser testified that the Defendant reported having poor mental health, which he attributed to depression. The Defendant also suffered from back problems, having undergone neck and back surgeries, and Parkinson's disease.

Timothy Lane, the Director of the 17th Judicial District Drug Task Force, testified that all of the drugs the Defendant sold were pills that the Defendant had received for free through government programs, such as Medicare and TennCare. Director Lane said prescription medication was the worst problem facing his task force. The director opined that punishing a seller of prescription pills was both a specific and general deterrent.

Director Lane testified that the Defendant assisted the drug task force in setting up a drug buy. Director Lane also said that he provided authorities the information regarding the Defendant's statement that he had sold drugs to a Lewisburg police officer.

On cross-examination, Director Lane conceded that he had not done any statistical analysis of whether the incarceration of drug dealers causes either specific or general deterrence. He maintained, however, that in his experience incarceration of drug dealers had both specific and general deterrent value.

Based upon this evidence, the trial court merged several of the counts and then sentenced the Defendant, a Range I Standard Offender, to a four-year suspended sentence

on each of the three counts of Sale of a Schedule III Controlled Substance, the three counts of Sale of a Schedule IV Controlled Substance, and the one count of Delivery of a Schedule IV Controlled Substance. On the two counts of Sale of a Schedule II Controlled Substance, the Defendant was sentenced to six years, 365 days of which was ordered to be served in county jail, with the remainder to be served on probation. The trial court ordered all of the sentences to be served concurrently.

## II. Analysis

On appeal, the Defendant contends that his sentence is excessive and contrary to law. He asserts that the weight that the trial court afforded the applicable enhancement and mitigating factors does not comply with the purposes of the 1989 Sentencing Act. He states, "a sentence of six years was not appropriate under the facts as stated in the record." The State counters that the record clearly evinces that the trial court followed the applicable sentencing principles and properly sentenced the Defendant.

When sentencing the Defendant, the trial court found that one enhancement and two mitigating factors applied. The trial court found that enhancement factor(1), that the Defendant had a previous history of criminal convictions or behavior, applied based upon his admissions that he sold drugs on ten to twelve prior occasions and that he used TennCare to facilitate these sales. T.C.A. § 40-35-114(1) (2006). The trial court found that mitigating factor (9), that the Defendant assisted authorities in uncovering offenses committed by other persons, applied and that his confession to other offenses and his pleading guilty supported the application of the catch-all mitigating factor (13). T.C.A. § 40-35-113(9), (13) (2006).

The trial court considered the Defendant's potential or lack of potential for rehabilitation. It noted that the Defendant failed to appear to serve the sixty-day sentence from Bedford County General Sessions Court, which the court said bore "negatively on his amenability to successfully complete probation." The trial court also found that confinement was particularly suited to provide an effective deterrent to people likely to commit similar offenses.

Before setting the length of the Defendant's sentence, the trial court stated, "The length is going to be . . . a longer sentence [than I would have otherwise sentenced based upon enhancement and mitigating factors I find], because I am going to do a split sentence in this case." The trial court sentenced the Defendant to the maximum of six years for the Class C felony convictions and four years for the Class D felony convictions and ordered all the sentences to run concurrently. The trial court noted that, because of the Defendant's "health problems and his age, it would probably be best that [the Defendant] serve this time

4

in the county jail and not have to go to the penitentiary." It then ordered the Defendant to serve a split sentence, ordering him to serve 365 days in the county jail followed by probation.

When a defendant challenges the length, range, or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2006). This presumption, however, is conditioned upon the affirmative showing in the record that the trial court properly sentenced the defendant. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). As the Sentencing Commission Comments to this section note, the burden is on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. If the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result was preferred. T.C.A. § 40-35-103 (2006), *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In conducting a de novo review of a sentence, we must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 4-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2009); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The Criminal Sentencing Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence. Under the Act, a trial court may impose a sentence within the applicable range as long as the imposed sentence is consistent with the Act's purposes and principles. T.C.A. § 40-35-210(c)(2) and (d) (2006); *see State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). The Tennessee Code allows a sentencing court to consider enhancement factors when determining whether to enhance a

defendant's sentence, including enhancement factor (1) that the defendant has a history of criminal convictions or criminal behavior in addition to those necessary to establish the defendant's range. T.C.A. § 40-35-114(1). In order to ensure "fair and consistent sentencing," the trial court must "place on the record" what, if any, enhancement and mitigating factors it considered as well as its "reasons for the sentence." T.C.A. § 40-35-210(e). Before the 2005 amendments to the Sentencing Act, both the State and a defendant could appeal the manner in which a trial court weighed enhancement and mitigating factors it found to apply to the defendant. T.C.A. § 40-35-401(b)(2) (2003). The 2005 amendments deleted as grounds for appeal, however, a claim that the trial court did not properly weigh the enhancement and mitigating factors. *See* 2005 Tenn. Pub. Acts ch. 353, §§ 8, 9. In summary, although this Court cannot review a trial court's weighing of enhancement factors, we can review the trial court's application of those enhancement factors. T.C.A. § 40-35-401(d) (2006); *See Carter*, 254 S.W.3d at 343.

Having thoroughly reviewed the record, we conclude that the evidence supports the trial court's application of enhancement factor number (1). The Defendant admitted in his presentence report that he sold drugs on multiple occasions in addition to those for which he was charged and found guilty. Further, as the trial court noted, the Defendant used TennCare to obtain drugs that he then resold, thus exhibiting a history of additional criminal conduct. We further conclude that the Defendant's sentence of split confinement complies with the purposes of the Sentencing Act. While the trial court found applicable mitigating factors, it expressed concern that the Defendant failed to appear to serve a previous sixty-day sentence. The trial court properly considered the Defendant's health, age, and potential for rehabilitation when determining this sentence. We will not disturb the trial court's sentence on appeal. The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the Defendant's sentence.

_____
ROBERT W. WEDEMEYER, JUDGE

6