STATE of Tennessee, Appellee,

v.

Marise E. SMITH, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

July 21, 1994.

Permission to Appeal Denied by Supreme Court Oct. 3, 1994.

924

Charles W. Burson, Atty. Gen. & Reporter, Clinton J. Morgan, Asst. Atty. Gen., Victor S. Johnson, III, Dist. Atty. Gen., Mary P. Hausman, Jon P. Seaborg, Asst. Dist. Attys. Gen., Nashville, for appellee.

Jeffrey A. DeVasher (on appeal only), J. Paul Newman (on trial only), Assistant Metro Public Defenders, Nashville, (Karl F. Dean, Metropolitan Public Defender, of counsel), for appellant.

## OPINION

JONES, Judge.

The appellant, Marise E. Smith, was convicted of aggravated burglary, a Class C felony, two counts of attempt to commit rape,

a Class C felony, aggravated rape, a Class A felony, and one count of harassment, a Class A misdemeanor, by a jury of his peers. The trial court imposed the following sentences:

(a) Count 1, which charged the offense of aggravated burglary, confinement for three (3) years in the Department of Correction as a Range I standard offender;

(b) Counts 2 and 3, which charged the offense of attempt to commit rape, eight (8) years in the Department of Correction as to each count as a Range II multiple offender;

(c) Count 4, which charges the offense of aggravated rape, twenty (20) years, as a Range I standard offender; and,

(d) Count 6, which charged the offense of harassment, eleven months and twenty-nine days.

The sentences are to be served consecutively. The effective sentence imposed by the trial court was thirty-nine years, eleven months, and twenty-nine days.

Two issues are presented for review. The appellant contends that the evidence contained in the record is insufficient, as a matter of law, to support a finding by a rational trier of fact of guilt beyond a reasonable doubt as to all of the offenses. He also contends that the sentences imposed by the trial court are excessive; and the trial court abused its discretion by requiring the sentences to be served consecutively.

The judgment of the trial court is affirmed as modified.

During the early morning hours of April 9, 1992, the appellant entered the residence of the victim through a dining room window. He removed his pants in the hallway and entered the victim's bedroom. The victim was awakened when she heard the bedroom floor "creak." As she turned to look, she saw the figure of a person crouching next to her bed. The appellant immediately pinned the victim to the bed. He had a cord in his hand. The victim could not determine if the cord was made of rope or leather. The appellant attempted to penetrate the victim's vagina, but his reproductive organ was not sufficiently erect. After masturbating and obtaining an erection, he began to penetrate the victim's anus. The victim asked the appellant not to penetrate her anus. When she realized that she could not resist the appellant, and the appellant may kill her if she did not submit, the victim asked the appellant to penetrate her vagina. The appellant obliged the appellant and engaged in vaginal intercourse with the victim.

The victim subsequently engaged the appellant in conversation. The appellant told the victim that he had a hard time finding girlfriends. He also told her that he had taken a course in love psychology. Later, the appellant exited the residence through the open dining room window.

A nurse practitioner examined the victim on the date in question. The findings of the nurse practitioner were consistent with vaginal penetration. A forensic analysis of the vaginal swabs prepared by the nurse practitioner and the victim's panties revealed the presence of sperm. In addition, the police found that the fingerprints lifted from the dining room window matched the appellant's fingerprints.

The appellant made several telephone calls to the victim's residence. The numbers were recorded on a caller identification device that the victim had installed. The appellant's voice was recorded on a tape contained in the victim's answering machine. The victim identified the voice as the person who had raped her. She stated the appellant had a Florida accent.

The telephone numbers recorded on the victim's caller identification device were listed to an automobile dealership in Franklin, Tennessee. The investigating officers took the answering machine tape to the automobile dealership where the general manager listened to the tape. The general manager identified the voice as that of the appellant, an employee of the dealership. The officers obtained a copy of the appellant's employment records. The records revealed that the appellant had resided in Florida and had taken courses in psychology.

The appellant testified that he had consensual vaginal intercourse with the victim after meeting her in a local bar. After leaving the victim's residence on the morning in question, he discovered that he had left his keys inside the appellant's residence. When the victim did not answer the door, he went to the dining room window, stood on a gas meter, and tapped on the window. According' to the appellant, the victim responded, opened the front door, and he obtained his keys. He could not explain why the victim claimed that she was raped. The appellant opined that the victim was angry because he would not spend the remainder of the night with her. He explained the telephone calls as an attempt to fulfill a promise to call the victim. When the victim did not answer the telephone, he continued to call in an effort to contact her.

## I.

The appellant contends that the evidence, when taken in the light most favorable to the state, supports his theory of a consensual sexual relationship. He argues that the conduct of the victim following the events in question was inconsistent with that of a rape victim. He also argues that the state failed to prove (a) "bodily injury", an element of aggravated rape, and (b) the offense of harassment, as alleged in count six of the indictment, because (1) the victim "received" only one telephone call and (2) the calls made to the victim's home were neither annoying nor alarming.

## A.

■ When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt."[1] This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence.[2]

■ In determining the sufficiency of the convicting evidence, this Court does not reweigh or reevaluate the evidence.[3] Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence.[4] To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.[5]

■ Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court.[6] In *State v. Grace*[7] our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

■ Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact.[8] This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record and any infer-

1. Tenn.R.App.P. 13(e).

2. *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim.App.1990), *per. app. denied*, (Tenn.1990).

3. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim.App.1990), *per. app. denied*, (Tenn.1990).

4. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, *cert. denied*, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956).

5. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

6. *State v. Cabbage*, 571 S.W.2d at 835.

7. 493 S.W.2d 474, 476 (Tenn.1973).

8. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

ences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt.[9]

■ The appellant has failed to illustrate why the evidence contained in the record is insufficient to support the convictions for aggravated burglary and attempt to commit rape. Based upon the foregoing principles of appellate review, the evidence is more than adequate to support a finding by a rational trier of fact that the appellant was guilty of these offenses beyond a reasonable doubt.[10] Since the appellant makes specific attacks upon his convictions for aggravated rape and harassment, these offenses will be addressed separately.

**B.**

■ Before an accused may be convicted of aggravated rape as alleged in Count four

of the indictment, the state is required to prove beyond a reasonable doubt that the accused (a) sexually penetrated[11] the victim,[12] in an unlawful manner and (b) caused bodily injury to the victim.[13] As previously stated, the appellant admitted that he sexually penetrated the victim. The jury determined that the act constituted an "unlawful sexual penetration" within the meaning of the statute. Therefore, the jury's verdict must be affirmed if the state established that the appellant inflicted "bodily injury" to the victim.

The statutory definition of the term "bodily injury" includes "a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of bodily member, organ, or mental faculty."[14] This Court has previously held that a scratch,[15] an abrasion,[16] a small bruise,[17] a laceration,[18] and the physical pain caused by vaginal penetration[19] constitute "bodily inju-

---

9. *State v. Tuggle*, 639 S.W.2d at 914.

10. Tenn.R.App.P. 13(e). *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

11. The term "sexual penetration" is defined as "*sexual intercourse*, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight of any part of a person's body or any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Tenn.Code Ann. § 39–13–501(7) (1991). (Emphasis added).

12. The term "victim" is defined as "the person alleged to have been subjected to criminal sexual conduct." Tenn.Code Ann. § 39–13–501(8) (1991).

13. Tenn.Code Ann. § 39–13–502(a)(2) (Supp. 1993).

14. Tenn.Code Ann. § 39–11–106(a)(2) (1991).

15. *State v. Locke*, 771 S.W.2d 132, 136 (Tenn. Crim.App.1988), *per. app. denied*, (Tenn.1989) (scratch on neck). *See State v. Leon Campbell*, Williamson County No. 88–220–III, 1989 WL 51587 (Tenn.Crim.App., Nashville, May 19, 1989), *per. app. denied*, (Tenn.1989) (scratches on leg); *State v. Charles Dwayne Prince*, Lawrence County No. 87–144–III, 1988 WL 23027 (Tenn. Crim.App., Nashville, March 11, 1988), *per. app.*

denied, (Tenn.1988), *rev'd on other grounds*, Lawrence County No. 01–C–01–9102–CC–00058, 1992 WL 127439 (Tenn.Crim.App.1992) (scratches on legs and elbows).

16. *State v. Chad Parker*, Rutherford County No. 01–C–01–9301–CC–00040, 1993 WL 366562 (Tenn.Crim.App., Nashville, September 16, 1993) (abrasion on right lower leg); *State v. Jonathan A. Hyler*, Davidson County No. 01–C–01–9010–CR–00267, 1991 WL 169557 (Tenn.Crim.App., Nashville, September 5, 1991) (abrasions on arms); *State v. William R. Smothers*, Montgomery County No. 86–236–III, 1987 WL 11317 (Tenn.Crim.App., Nashville, May 29, 1987) (abrasion on left shoulder).

17. *State v. Harris*, 866 S.W.2d 583 (Tenn.Crim. App.1992) *per. app. denied*, (Tenn.1993) (small bruise on hip). *See State v. Jonathan A. Hyler*, *supra* (bruised wrists, upper arms, and left shoulder); *State v. Charles Dwayne Prince*, *supra* (bruises on the left arm, elbows, and legs); *State v. William R. Smothers*, *supra* (bruise on left wrist).

18. *State v. Leon Campbell*, *supra* (laceration on thigh).

19. *State v. Harris*, 866 S.W.2d at 587 ("the victim's pelvic area was more tender than normal, as was to be expected after painful intercourse"). *See State v. Chad Parker*, *supra* (tenderness and redness in the labia minora).

ry" within the meaning of the statute. As this Court said in *State v. Harris:* [20] "Our legislature has included bruising and physical pain as adequate elements justifying a conviction for aggravated rape. It is not the duty of this Court to apply size or degree requirements to such unambiguous legislation." [21]

In this case, the state established that the appellant sustained "bodily injury" beyond a reasonable doubt.[22] The appellant placed his entire body weight on the victim's chest causing her to suffer physical pain in her chest. The victim also sustained physical pain while the appellant penetrated her vagina. The nurse practitioner who examined the victim testified that the victim complained of soreness in her chest. The examination also revealed some redness inside the victim's vagina accompanied by a small amount of blood.

### C.

■ Before an accused can be convicted of harassment as alleged in Count six of the indictment, the state must prove beyond a reasonable doubt that the appellant (a) placed one or more telephone calls anonymously, at an inconvenient hour, or in an offensively repetitious manner, (b) the caller does not have a legitimate purpose for communicating with the victim, and (c) the action of the accused knowingly annoys or alarms the victim.[23] An accused acts "knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." [24]

In this case, the state established this offense beyond a reasonable doubt.[25] The appellant placed numerous calls to the victim's residence. These calls were kept in the memory of a caller identification device that recorded the date, time and telephone number of the caller. The victim answered one call and recognized the voice as the person who had raped her. On another occasion the appellant spoke to the victim on her answering machine. The appellant began calling the victim's residence several hours after the rape. The first few calls were answered by a police officer and a friend of the victim. The appellant knew that he had raped the victim and he also knew, or should have known, that the numerous calls he made to her residence would both annoy and alarm her. This is especially true of the calls made a few hours after the rape had occurred. The appellant did not have a legitimate reason for making the telephone calls.

### II.

The appellant contends that the sentences imposed by the trial court are excessive, with the exception of the sentence for aggravated burglary. He argues that the trial court erroneously applied certain enhancement factors. The appellant also contends that the trial court abused its discretion in requiring that the sentences be served consecutively.

### A.

■ When an accused challenges the length and manner of serving sentences, it is the duty of this Court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." [26] However, there are exceptions to this statutory mandate. The requirement that this Court presume the determinations made by the trial court are correct is "conditioned upon the affirmative showing in the record

**20.** 866 S.W.2d 583 (Tenn.Crim.App.1992), *per. app. denied,* (Tenn.1993).

**21.** 866 S.W.2d at 588.

**22.** Tenn.R.App.P. 13(e); *Jackson v. Virginia, supra.*

**23.** Tenn.Code Ann. § 39–17–308(a)(2) (1991).

**24.** Tenn.Code Ann. § 39–11–106(a)(20) (1991).

**25.** Tenn.R.App.P. 13(e); *Jackson v. Virginia, supra.*

**26.** Tenn.Code Ann. § 40–35–401(d) (1990).

that the trial court considered the sentencing principles and all relevant facts and circumstances." [27] The presumption of correctness also does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts.[28]

In this case, the appellant is not entitled to the statutory presumption regarding alternative sentencing.[29] The offense of aggravated rape is a Class A felony. The presumption is limited to Class C, D and E felonies.[30] Also, the appellant falls within the parameters of T.C.A. § 40–35–102(5) because he stands convicted of a serious offense, aggravated rape, he has a history of prior convictions that evince "a clear disregard for the laws and morals of society," and past efforts to rehabilitate the appellant have failed.[31] Finally, the trial court imposed Range II sentences for the offenses of attempt to commit rape. The presumption only applies to an individual who is sentenced as either an especially mitigated offender or a standard offender.[32]

The appellant has the burden of establishing that the sentences imposed by the trial court were erroneous.[33] Thus, this Court must determine whether the appellant has established that the sentences imposed by the trial court are erroneous. In doing so, this Court must consider (a) the evidence adduced at trial and at the sentencing hearing, (b) the pre-sentence report, (c) the principles of sentencing, (d) the arguments of counsel, (e) the nature and characteristics of the offenses, and (f) the appellant's potential or lack of potential for rehabilitation or treatment.[34]

## B.

The trial court found that there were three enhancement factors established by the evidence adduced at trial and at the sentencing hearing. The factors used to enhance the appellant's sentences within the appropriate range were: (a) the "personal injuries inflicted upon ... the victim [were] particularly great," [35] (b) the appellant possessed a deadly weapon, i.e. a cord which could have been used to strangle the victim,[36] and (c) the appellant committed the crimes "under circumstances under which the potential for bodily injury to a victim was great." [37] The trial court applied enhancement factors six and nine to the offenses of attempt to commit rape and aggravated rape. Enhancement factor sixteen was applied to the offenses of attempt to commit rape and aggravated burglary.

The appellant contends that the trial court should not have applied enhancement factors six and sixteen.

## 1.

The appellant contends that the "serious emotional injuries" sustained by the victim do not constitute "personal injuries" within the meaning of enhancement factor

27. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

28. *State v. Bonestel*, 871 S.W.2d 163, 166 (Tenn. Crim.App.1993).

29. Tenn.Code Ann. § 40–35–102(6) (1990).

30. Tenn.Code Ann. § 40–35–102(6) (1990).

31. Tenn.Code Ann. § 40–35–102(5) (1990).

32. Tenn.Code Ann. § 40–35–102(6) (1990).

33. Sentencing Commission Comments to Tenn. Code Ann. § 40–35–401 (1990); *State v. Ashby,*

823 S.W.2d at 169; *State v. Fletcher*, 805 S.W.2d 785, 786 (Tenn.Crim.App.1991).

34. Tenn.Code Ann. §§ 40–35–103(5) and –210(b) (1990).

35. Tenn.Code Ann. § 40–35–114(6) (Supp.1993).

36. Tenn.Code Ann. § 40–35–114(9) (Supp.1993).

37. Tenn.Code Ann. § 40–35–114(16) (Supp. 1993).

six.[38] He predicates this argument on the holding in *State v. Henderson.*[39] This Court has previously rejected this argument.[40]

The Criminal Sentencing Reform Act of 1989 *does not define the term "personal injuries."* Furthermore, this term is peculiar to enhancement factor six.[41] There are two explanations for this omission. Since the *definition of the term "personal injury,"* as used in the 1982 Criminal Sentencing Reform Act, was identical to the present definition of the term "bodily injury," either (a) the General Assembly failed to substitute the term "bodily injury" for the term "personal injury" due to an oversight, or (b) the General Assembly intended that this enhancement factor should be broad enough to include injuries which are not embraced in the definition of "bodily injury."

The Tennessee Sentencing Commission drafted the Tennessee Criminal Sentencing Reform Act of 1989 and submitted the final draft to the General Assembly for enactment. Prior to preparing the final draft the Commission conducted exhaustive research and debated what should be included in the Act. Based upon well-established rules of statutory construction, this Court concludes that both the Commission and the General Assembly were aware of the distinction between the definition of "personal injuries" and the statutory definition of "bodily injury"; and the clear intent of the General Assembly was to make this enhancement factor broad enough to include injuries which are not presently embraced in the statutory definition of "bodily injury."

The term "personal injury" is broad enough to embrace the severe emotional injuries and the psychological scaring that the victim has suffered and will continue to suffer as a result of the appellant's actions. The victim could not enter her home alone for several months after the rape. In fact, she lived with friends for three months following the attack. When visiting a friend in California, the victim arose every thirty minutes during the night to make sure the doors and windows were locked. Her close friends testified that she has incurred a drastic personality change. She has undergone counseling to help her cope with everyday life. In short, the emotional scars inflicted by the appellant are deep and will last the remainder of the victim's life. The trial court found that the emotional injuries sustained by the victim far exceeded the emotional impact rape has on most victims.

The trial court properly used factor six to enhance the punishment for the offenses of attempt to commit rape and aggravated rape within the appropriate range.

### 2.

■■■■ The trial court found that the crimes in question "were committed under circumstances under which the potential for bodily injury to a victim was great."[42] Thus, this factor was used to enhance the appellant's sentences within the appropriate range.

The General Assembly has seen fit to enhance the punishment for aggravated burglary and aggravated rape. In doing so, the General Assembly recognized that the potential for bodily injury to the victim is great when these crimes are committed. Thus, a trial court should not apply this factor absent extraordinary circumstances. There are no extraordinary circumstances in this case which warrant the application of this factor.

38. Tenn.Code Ann. § 40–35–114(6) (Supp.1993).

39. 623 S.W.2d 638, 640 (Tenn.Crim.App.1981).

40. *See State v. Chad Parker,* Rutherford County No. 01–C–01–9301–CC–00040, 1993 WL 366562 (Tenn.Crim.App., Nashville, September 16, 1993).

41. Various phrases are found in the enhancement factors set forth in Tenn.Code Ann. § 40–35–114. Factor five contains the phrase "exceptional cruelty." Factors eleven, twelve and sixteen contain the term "bodily injury." As previously noted, the phrase "bodily injury" is defined by the Act. Tenn.Code Ann. § 39–11–106(a)(2) (1991).

42. Tenn.Code Ann. § 40–35–114(16) (Supp. 1993).

The trial court properly refrained from using this factor to enhance the appellant's sentence for aggravated rape but improperly applied it to the aggravated burglary. However, the trial court properly used this factor to enhance the appellant's sentence for attempt to commit rape.

3.

■ The trial court expressed the opinion that the appellant's criminal record could not be used to enhance his sentences within the appropriate range and also be used as a justification for the imposition of consecutive sentences. This Court has held that the prior convictions of an accused can be used to enhance a sentence within the appropriate range as well as to justify consecutive sentences.[43] Since this enhancement factor was clearly established by the evidence, it should have been considered by the trial court. This Court can and will consider this factor in determining whether the sentences imposed by the trial court are excessive.[44]

■ The record clearly establishes that the appellant committed the offenses in question to gratify his desire for pleasure or excitement.[45] The appellant removed his clothing before entering the victim's bedroom. He made sexually explicit remarks while penetrating the victim. After the rape, he told the victim that he had difficulty in finding a girlfriend. He also told her that he had taken a course in love psychology. He did not attempt to physically harm the victim. The only injuries sustained by the victim resulted from the struggle and the penetration. While the trial court did not mention or allude to factor seven, this Court will consider it in determining whether the sentences imposed by the trial court are excessive.[46]

■ The trial court concluded that enhancement factor eight did not apply.[47] The court concluded that the violation of the appellant's probation occurred after his arrest for the offenses of which he stands convicted. Apparently the trial court overlooked the appellant's testimony concerning his placement in a work release program and his subsequent escape.

The appellant testified that he received sentences totalling four and one-half years for burglary and the theft of a motor vehicle. He served approximately two years of the sentence. He was then placed in a work release program. He violated the terms of this program. He was subsequently arrested in the State of Illinois in possession of another stolen motor vehicle. Thus, enhancement factor eight should have been applied by the trial court. As previously stated, this Court can and will consider this factor in determining whether the appellant's sentences are excessive.[48]

C.

The trial court found that (a) the appellant had an extensive record of criminal activity,[49] (b) the appellant is a dangerous offender,[50] and (c) the appellant committed the offenses in question while he was on probation.[51] Based upon these findings, the trial court ordered that the sentences imposed are to be served consecutively.

43. State v. Meeks, 867 S.W.2d 361, 377 (Tenn. Crim.App.1993), cert. denied, — U.S. —, 114 S.Ct. 1200, 127 L.E.2d 548 (1994); State v. Davis, 825 S.W.2d 109, 113 (Tenn.Crim.App. 1991), per. app. denied, (Tenn.1992). See State v. Davis, 757 S.W.2d 11, 13 (Tenn.Crim.App.1987), per. app. denied, (Tenn.1987).

44. State v. Adams, 864 S.W.2d 31, 34 (Tenn. 1993); State v. Pearson, 858 S.W.2d 879, 881 (Tenn.1993).

45. Tenn.Code Ann. § 40–35–114(7) (Supp.1993).

46. State v. Adams, supra.

47. Tenn.Code Ann. § 40–35–114(8) (Supp.1993).

48. State v. Adams, supra; State v. Pearson, supra.

49. Tenn.Code Ann. § 40–35–115(b)(2) (1990).

50. Tenn.Code Ann. § 40–35–115(b)(4) (1990).

51. Tenn.Code Ann. § 40–35–115(b)(6) (1990).

The appellant contends that consecutive sentences are not warranted in this case. He argues that his record of criminal activity is not extensive and he is not a dangerous offender. He does not contest the fact that he was on probation when he committed the offenses in question.

### 1.

The transcript of the sentencing hearing establishes that the appellant was convicted of burglary, two counts of stealing a motor vehicle, and escape before his conviction in this case. There is also testimony that suggests the appellant has been convicted of other offenses. Since the pre-sentence report was not made a part of the record transmitted to this Court, a *de novo* review of this subissue is impossible.

■ When an appellant seeks review of an issue in this Court, it is the duty of the appellant to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues which form the basis of the appeal.[52] In this case, it was the duty of the appellant to have the pre-sentence report made a part of the record transmitted to this Court.[53] Since the record is incomplete, this Court must conclusively presume that the ruling of the trial court relative to this subissue was correct.[54]

### 2.

■ In *State v. Woods*[55] this Court addressed the criteria for consecutive sentencing on the ground that the accused is a dangerous offender. This Court said:

... a defendant may not be required to serve multiple sentences consecutively on the ground he is a dangerous offender unless the record establishes that:

(a) the defendant's behavior indicates "little or no regard for human life," and he did not hesitate "about committing a crime in which the risk to human life is high," Tenn. Code Ann. § 40–35–115(b)(4) (Supp.1989);

(b) the circumstances surrounding the commission of the offense are aggravated, *Gray v. State*, 538 S.W.2d [391,] 393 [ (Tenn.1976) ];

(c) confinement for an extended period of time is necessary to protect society from the defendant's unwillingness to "lead a productive life and [his] resort to criminal activity in furtherance of [his] anti-societal lifestyle," *Gray v. State*, 538 S.W.2d at 393; and

(d) the aggregate length of the sentences, if consecutive sentencing is ordered, reasonably relates to the offenses of which the defendant stands convicted. *State v. Taylor*, 739 S.W.2d [227,] 230 [ (Tenn.1987) ].[56]

In this case, the circumstances surrounding the offenses were not aggravated.

The General Assembly, realizing that there is an element of dangerousness associated with the offenses of aggravated burglary and aggravated rape, made the offense of aggravated burglary a Class C felony and the offense of aggravated rape a Class A felony. The punishment for these offenses exceeds the penalty for burglary, which is either a Class D or Class E felony depending upon

52. Tenn.R.App.P. 24(b). *See State v. Bunch*, 646 S.W.2d 158, 160 (Tenn.1983); *State v. Oody*, 823 S.W.2d 554, 559 (Tenn.Crim.App.1991), *per. app. denied*, (Tenn.1991); *State v. Bennett*, 798 S.W.2d 783, 789 (Tenn.Crim.App.1990), *cert. denied*, 500 U.S. 915, 111 S.Ct. 2009, 114 L.E.2d 98 (1991). *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim.App.1988), *per. app. denied*, (Tenn.1988).

53. *State v. Beech*, 744 S.W.2d 585, 588 (Tenn. Crim.App.1987), *per. app. denied*, (Tenn.1987).

54. *State v. Bennett, supra*; *State v. Locke*, 771 S.W.2d 132, 138 (Tenn.Crim.App.1988), *per. app. denied*, (Tenn.1989); *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn.Crim.App.1988), *per. app. denied*, (Tenn.1988); *State v. Beech, supra*.

55. 814 S.W.2d 378 (Tenn.Crim.App.1991), *per. app. denied*, (Tenn.1991).

56. 814 S.W.2d at 380.

the circumstances, and rape, which is a Class B felony. As the Supreme Court said in *Gray v. State:* [57]

A defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. *This does not mean that all defendants convicted of several counts of a dangerous offense, such as armed robbery, should be consecutively sentenced.* Even though armed robbery is a dangerous offense, *there are increased penalties for that crime.* The decision to impose consecutive sentences when crimes inherently dangerous are involved *should be based upon the presence of aggravating circumstances and not merely on the fact that two or more dangerous crimes were committed.*[58]

The appellant did not strike or otherwise seriously injure the victim. He rested his entire body weight on her chest when she resisted him. The victim complained of physical pain in her chest. She also complained that the penetration caused her physical pain. After the appellant had ejaculated, he obtained his clothing and dressed himself. He then engaged in a conversation with the victim. While the physical pain justified a conviction for aggravated rape, it did not support a finding that the appellant is a dangerous offender for purpose of consecutive sentencing. The enhanced sentence of twenty (20) years was appropriate for this criminal conduct.

### 3.

■ The appellant does not challenge the trial court's finding that he was on probation when he committed the offenses in this case. The question which this Court must decide is whether consecutive sentences are justified given this finding.

The appellant was twenty-one years of age. As previously noted, the appellant had been convicted of burglary, two counts of theft of a motor vehicle, and escape. Measures were previously taken to assist the appellant in rehabilitating himself. Unfortunately, these measures were unsuccessful. He was on probation when he committed the offenses in this case. It is apparent that the appellant is now past the rehabilitative stage and confinement for an extended period of time is necessary to protect society from his unwillingness to "lead a productive life and [his willingness] to resort to criminal activity in furtherance of [his] anti-societal lifestyle."[59]

The aggregate length of the sentences imposed by the trial court reasonably relates to the offenses of which the appellant stands convicted, one Class A felony and three Class C felonies.[60] As a result of his conduct, the victim sustained severe damage to her emotional well-being. In summary, the trial court properly imposed consecutive sentences.

### D.

■ The trial court ordered that the appellant is to serve the sentence imposed for harassment, a Class A misdemeanor, in a Department of Correction facility. The court also ordered that the appellant is to serve 100% of this sentence day for day. This is an illegal sentence. While neither party has raised this issue, this Court has the authority to correct the sentence.[61]

A sentence imposed for a misdemeanor offense is to be served in a jail or workhouse, not a Department of Correction facility. In addition, the maximum percentage that a defendant may be required to serve before becoming eligible for work release, a furlough, trustee status or related rehabilitative

57. 538 S.W.2d 391 (Tenn.1976).

58. 538 S.W.2d at 393 (Emphasis added).

59. *Gray v. State,* 538 S.W.2d at 393.

60. *State v. Taylor,* 739 S.W.2d 227, 230 (Tenn. 1987).

61. *State v. Beech,* 744 S.W.2d 585, 588 (Tenn. Crim.App.1987), *per. app. denied,* (Tenn.1987).

programs is seventy-five percent (75%) of the sentence.[62]

The sentence imposed for harassment is amended to provide that the appellant will serve this sentence in the Davidson County Workhouse; and the maximum percentage the appellant must serve before becoming eligible for work release, a furlough, trustee status or related rehabilitative programs is seventy-five percent (75%).

## CONCLUSION

The sentences imposed by the trial court were appropriate for the offenses committed by the appellant given his prior record and the number of enhancement factors that are established by the record. In addition, the trial court properly required the appellant to serve the sentences consecutively.

The appellant has been given every opportunity to rehabilitate himself. He has refused to take advantage of the opportunities presented by the criminal justice system in Florida and Illinois. Based upon a thorough

**62.** Tenn.Code Ann. § 40–35–302(d) (Supp.1993).

reading of the record, this Court concludes that further efforts to rehabilitate the appellant would not succeed. Thus, the criminal justice system of this state must confine the appellant for an extended period of time to protect the citizens of Tennessee and this Nation from the appellant's anti-societal life-style.

The judgment in the harassment case is modified as hereinabove set forth.

WADE, J., and ALLEN R. CORNELIUS, Jr., Special Judge, concur.