# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs March 23, 2010

## STATE OF TENNESSEE v. JAMES G. COONS, II

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2008-B-893   Cheryl Blackburn, Judge**

_____

**No. M2009-01361-CCA-R3-CD - Filed June 4, 2010**

_____

The Defendant, James G. Coons, pled guilty to second degree murder, and the trial court sentenced him to forty years in the Tennessee Department of Correction. The Defendant appeals, contending the trial court did not adequately consider his mental health as a mitigating factor in his punishment. After a thorough review of the record and applicable law, we conclude the trial court properly sentenced the Defendant. As such, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the Appellant, James G. Coons, II.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Renee W. Turner, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Katrin N. Miller and Kristen E. Menke, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's fatal stabbing of his wife, with whom he had a history of domestic violence. The Defendant's presentence report contains the following account of the events leading up to and following the victim's death:

On 11/09/07 the victim, Rebecca Coons, returned home from work and ended

up getting into an argument with her husband, [the Defendant]. The argument started because [the Defendant] wanted to use the victim's truck to go get his new medication. The victim did not want [the Defendant] to drive her truck because he did not have a license. The argument went on for some time and the [Defendant] got angry. During the interview the [Defendant] stated that he blacked out and didn't remember stabbing the victim, but she was stabbed/cut 22 times and died at the scene. The suspect called his mother, Donna Coons. He told her that he had hurt his wife and that she needed to check on her. Donna Coons woke up her other son, Thomas Coons and both came to the Bell Road apartment. When they arrived, James let them into the apartment. Thomas check[ed] the victim's pulse and found that she did not have one. James called mobile crisis and 911, while Thomas was still inside. Thomas and Donna Coons left [the] apartment and waited for the police. When Officer Shaw arrived, Thomas and Donna Coons told him that the [Defendant] had stabbed the victim and that she was dead. Shaw went into the apartment to check on the victim and saw that E.M.S. was working on the victim. He exited the apartment and was followed outside by [the Defendant]. The [Defendant] was still talking to mobile crisis when Shaw asked him what had happened. He stated that he had stabbed her. He was placed under arrest by Officer Shaw. E.M.S. did not transport the victim to the hospital. The suspect's family members gave written and taped statements . . . while at the scene. The [Defendant] was transported to the station where he signed a Miranda rights waiver during a video taped interview. He stated that he did not remember stabbing the victim, but he assumed he did. He stated that he blacked out during the argument. When he "awoke" she was lying on the floor "hurt," as he put it. He then [said] that he did call his mother to come check on her. The [Defendant] was arrested and charged with criminal homicide. The victim and the suspect have had a turbulent marriage, with several domestic violence allegations being made by the victim. To quote the victim's stepfather, "This doesn't surprise me at all."

Based upon this conduct, a Davidson County grand jury indicted the Defendant for first degree premeditated murder, and the Defendant subsequently pled guilty to second degree murder.

Following entry of the Defendant's guilty plea, the trial court held a sentencing hearing wherein the following evidence was presented: According to the presentence report, the Defendant, who was thirty-seven when he killed the victim and thirty-eight at sentencing, dropped out of school at age thirteen. He began to use alcohol and marijuana at age sixteen and did not stop until his mid-thirties. He has been diagnosed with bi-polar and anti-social

disorders, which were being treated with the medications Gedeon and Remeron. He attended counseling at Cornerstone from 2000 to 2001 and was admitted to Vanderbilt Hospital for depression in 2006. Since 2003, he had received Supplemental Security Income based upon his diagnosis of depression. The Defendant had three children from two previous marriages.

The Defendant's criminal record indicated he had over twenty convictions, including: four convictions for assault, four convictions for driving with a suspended or revoked license, two convictions for criminal impersonation, two convictions for theft between $500 and $1000, and one conviction each for failure to appear, aggravated assault, kidnapping, reckless driving, a weapons offense, theft under $500, resisting arrest, burglary, and manufacture of a Schedule I hallucinogen.

The victim's daughter submitted a letter describing how the victim's relationship with the Defendant alienated the victim from her family. The letter recounts several occasions on which the victim's daughter observed the Defendant strike and threaten the victim.

At the hearing, Dr. Stacy Turner, an assistant medical examiner for the Tennessee State Medical Examiner's Office, testified she performed the victim's autopsy. Dr. Turner testified that the victim was thirty-five when she died and that she was otherwise healthy. The victim's cause of death was multiple sharp force injuries. Her body bore twenty-two sharp force injuries, fourteen of which would have been fatal alone. The stab wounds appeared on the victim's upper back and on her left anterior chest and breast. She also had several scrapes on her right knee and multiple bruises and scrapes on her left knee. Finally, the victim also had multiple defensive injuries to her hands and arms. Dr. Turner testified that the injuries to the victim's hands and arms are consistent with injuries received from assuming a defensive position during an attack.

Dr. Turner said the maximum depth of the victim's stab wounds was five inches and that a kitchen-type knife likely caused her injuries. The victim had bilateral hemathoraces, the presence of collected blood in the chest and lungs. She likely died from her injuries in only a few minutes, and, due to the severity of her wounds, would not have survived with immediate medical attention.

Linda Streicher, the victim's mother, testified that she was aware that the Defendant was physically abusing the victim. The victim had told her mother she was planning to leave the Defendant and was considering moving in with either a friend from school or her half-sister who lived in Florida. Streicher said her daughter had graduated with a degree in criminal justice a few months before her death. Due to her experience with the Defendant, the victim planned to work with juveniles and with domestic violence.

3

Streicher explained that the Defendant's behavior toward her daughter had affected their family in several ways: the victim's daughter moved to East Tennessee in order to escape the Defendant whom she feared because of his violent behavior toward her mother. The victim's father felt guilty for not saving the victim from the Defendant, and he began to experience depression. The victim's son, from whom the victim was estranged, refused to mention his mother after her death.

The Defendant offered the following allocution statement: "I just wanted to say I'm sorry for what I did, but I tried to get some help a couple of days before it. And they let me go. And then I was out on some Klonopins. That's what made me forget what happened."

At the conclusion of the hearing, the trial court applied four enhancement factors and one mitigating factor, and it sentenced the Defendant to forty years in the Tennessee Department of Correction. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends the trial court failed to give due consideration to his poor mental health when it sentenced him to the maximum sentence within the applicable range. He does not contest the trial court's application of enhancement factors to his sentence. The State contends the trial court acted within its discretion when it gave little weight to the Defendant's mental health condition and imposed the maximum sentence based largely upon the Defendant's lengthy criminal record.

When a defendant challenges the length, range, or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2006). This presumption, however, is conditioned upon the affirmative showing in the record that the trial court properly sentenced the defendant. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). As the Sentencing Commission Comments to this section note, the burden is on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. If the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration and proper weight to the factors and principles relevant to sentencing under the 1989 Sentencing Act we may not disturb the sentence even if a different result was preferred. T.C.A. § 40-35-103 (2006); *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929

(Tenn. Crim. App. 1994). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

The Criminal Sentencing Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence. Under the Act, a trial court may impose a sentence within the applicable range as long as the imposed sentence is consistent with the Act's purposes and principles. T.C.A. § 40-35-210(c)(2) and (d) (2006); *see State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). The Tennessee Code allows a sentencing court to consider the following relevant enhancement factors when determining whether to enhance a defendant's sentence:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;

. . .

(5) The defendant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense;

. . .

(8) The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community;

. . .

(9) The defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense;

T.C.A. § 40-35-114(1), (5), (8), and (9) (2006). If an enhancement factor is not already an essential element of the offense and is appropriate for the offense, then a court may consider the enhancement factor in its length of sentence determination. T.C.A. § 40-35-114 (2006).

Section 40-35-113 contains a non-exclusive list of mitigating factors that a trial court may apply to a defendant's sentence "if appropriate for the offense." T.C.A. § 40-35-113(2006). Mitigating factor (8), which the trial court herein applied, applies where the defendant "was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense; however, the voluntary use of intoxicants does not fall within the purview of this factor." T.C.A. § 40-35-113(8). The burden of proving applicable mitigating factors rests upon the defendant. *State v. Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App., at Knoxville, Sept. 18, 1995), *perm. app. denied* (Tenn. 1996). In order to ensure "fair and consistent sentencing," the trial court must "place on the record" what, if any, enhancement and mitigating factors it considered as well as its "reasons for the sentence." T.C.A. § 40-35-210(e). Before the 2005 amendments to

5

the Sentencing Act, both the State and a defendant could appeal the manner in which a trial court weighed enhancement and mitigating factors it found to apply to the defendant. T.C.A. § 40-35-401(b)(2) (2003). The 2005 amendments deleted as grounds for appeal, however, a claim that the trial court did not properly weigh the enhancement and mitigating factors. *See* 2005 Tenn. Pub. Acts ch. 353, §§ 8, 9. In summary, although this Court cannot review a trial court's weighing of enhancement factors, we can review the trial court's application of those enhancement factors. T.C.A. § 40-35-401(d) (2006); *Carter*, 254 S.W.3d at 343.

The Defendant is a Range II offender, and second degree murder is a Class A felony. T.C.A. § 39-13-210 (2006). Therefore, the appropriate range for his sentence is twenty-five to forty years. T.C.A. § 40-35-112(b)(1) (2006). At the conclusion of the Defendant's sentencing hearing, the trial court applied enhancement factors (1), (5), (8), and (9). After it explained why each enhancement factor applied, it found that mitigating factor (8) applied and it described the weight it assigned factor (8) relative to the enhancement factors it found to apply:

> Looking at mitigation, the defense has cited this factor number eight. He was suffering from a mental or physical condition that significantly reduced the culpability of the offense. I have heard a little bit about that but not sufficient other than the defendant's statement. So I'm–I would consider that factor, but I do not give that much weight at all.
>
> So looking at the entire situation, given his prior record, which I give great weight to factor number one most particularly and giving some weight to factor five and nine but the main is his prior record, I'm going to sentence him to forty years as a Range 2 offender. He is not eligible for any alternative sentence whatsoever. So that is my decision. It's not concurrent or consecutive to anything. That doesn't apply in this case. So forty years, Range 2 offense sentence.

Thus, explaining that it gave very little weight to mitigating factor (8), the Defendant's mental health, and great weight to enhancement factor (1), the Defendant's criminal background, the trial court imposed the maximum sentence of forty years upon the Defendant.

The Defendant argues the trial court should have given more weight to the mitigating factor of his poor mental health and sentenced him to less than the maximum sentence. Evaluation of the trial court's weighing of the enhancement and mitigating factors, however, is beyond this Court's authority. *See* T.C.A. § 40-35-401(d); *Carter*, 254 S.W.3d at 343. Once the trial court found enhancement factors (1), (5), (8), and (9) to apply, it was free to

6

weigh them against mitigating factor (8) as it saw fit.  *Id*.  As such, we conclude the trial court acted within its discretion when it gave little weight to the Defendant's poor mental health and sentenced him to the maximum sentence.  He is not entitled to relief on this issue.

### III. Conclusion

After a through review of the record and relevant authorities, we conclude the trial court properly sentenced the Defendant.  As such, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE