# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## DECEMBER SESSION, 1998

FILED

July 7, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | **C.C.A. NO. 03C01-9807-CC-00243** |
| | **)** | |
| Appellee, | **)** | |
| | **)** | |
| | **)** | **COCKE COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. J. KENNETH PORTER** |
| **JAMIE DWAYNE REED,** | **)** | **JUDGE** |
| | **)** | |
| Appellant. | **)** | **(Direct Appeal - Voluntary** |
| | **)** | **Manslaughter)** |

FOR THE APPELLANT:

CARL R. OGLE, JR.
P. O. Box 129
Jefferson City, TN 37760

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

ERIK W. DAAB
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

AL SCHMUTZER, JR.
District Attorney General

W. BROWLOW MARSH
Assistant District Attorney
339 East Main Street
Newport, TN 37821

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On September 25, 1990, a Cocke County jury convicted Appellant Jamie Dwayne Reed of voluntary manslaughter. That same day, the trial court sentenced Appellant as a Range I standard offender to a term of five years in the Tennessee Department of Correction. Appellant filed a motion for a new trial on October 19, 1990, and the trial court denied the motion on October 22, 1990. Appellant filed notice of appeal on October 22, 1990. Apparently, no further activity occurred in this case until September 25, 1997, when the State filed a motion to revoke Appellant's bond because he had failed to file notice or perfect an appeal in this Court[1]. Appellant filed a motion to reinstate his bond on February 18, 1998, and the trial court reinstated bond on April 8, 1998. On appeal, Appellant challenges both his conviction and his sentence, raising the following issues:

1) whether the evidence was sufficient to support his conviction;
2) whether the jury was prejudiced by a comment made by a bailiff;
3) whether the trial court imposed an excessive sentence; and
4) whether the trial court should have imposed probation.

After a review of the record, we affirm the judgment of the trial court.

---

[1]The delay in this homicide case of approximately nine years between conviction and the hearing of this appeal is nothing short of disgraceful. It is beyond belief that the Cocke County Circuit Court Clerk's office did not monitor this appeal as it should have. What is even more incredible and disturbing is that the Office of the District Attorney failed to take action to revoke Appellant's bond in a homicide case until six years after the time for perfecting an appeal had elapsed.

## I. FACTS[2]

Officer Lynn Shults of the Newport Police Department testified that he was called to the scene of a wreck at the Eastport Exxon Station on October 4, 1989. When Shults arrived, he received information that someone had been shot. Shults subsequently entered the Eastport Market and found the victim, Jonathan Hicks, lying on his back. After determining that Hicks had no pulse, Shults saw that Hicks had car keys in his hand and that there was a trail of blood between Hicks and a car.

Ed Thompson testified that while he was at the Eastport Market, a car sped through the car wash, made a u-turn, and hit a white car, making a lot of racket. Shortly thereafter, Thompson heard what sounded like three firecrackers going off. Thompson then saw a man with blood coming out of his mouth run into the store, grab a candy rack, and fall to the floor.

According to the autopsy report of Doctor Cleland Blake, Hicks died from internal hemorrhaging caused by a single gunshot wound to the chest. At the time of death, Hicks had an ethyl blood alcohol level of "0.10 gms 90" and had trace amounts of diazepam and nordiazepan in his system.

Detective Jimmy Gregg of the Newport Police Department testified that when he arrived at the scene at 9:18 p.m., he only found Hick's car. Gregg then

---

[2]During the approximately eight years between the notice of appeal and the filing of the record and briefs in this case, the tapes of Appellant's trial, the hearing on his motion for a new trial, and the sentencing hearing were lost and thus, no transcript of the evidence could be prepared. Therefore, Appellant filed a statement of the evidence and an amended statement of the evidence pursuant to Rule 24(c) of the Tennessee Rules of Appellate Procedure.

went to Cocke County Baptist Hospital where Appellant had been transported by Officer James Holt. After Appellant received treatment for two stab wounds to his left arm, Appellant signed a waiver of his Miranda rights. Appellant subsequently gave a statement to the police that was introduced into evidence along with his waiver of rights form. A knife that was recovered from Appellant's car was also apparently introduced through the testimony of Detective Gregg.

In the statement that he gave to police, Appellant said that while he was at the service station, Hicks drove up and crashed into Appellant's car. Appellant then demanded that Hicks pay for the damage and when Hicks refused, the two began fighting. At some point, Hicks stabbed Appellant in the arm. Appellant subsequently went back to his vehicle, opened the door, pulled a gun out from under the driver's seat, and then shot Hicks. Appellant then left the scene and threw the gun in a river. Appellant later turned himself in to the police.

At trial, Appellant testified that he was parked at the car wash when Hicks crashed into his car. The two men got into an argument about the damage and they eventually began fighting. Hicks subsequently stabbed Appellant twice, and Appellant retrieved a gun from his car. Appellant then fired two warning shots into the air. Hicks then opened the passenger door of his car, and Appellant shot Hicks in order to disable him because Appellant believed that Hicks was attempting to get a gun. Appellant then left the scene, threw the gun into a river, and then turned himself in to the police.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence was insufficient to support his conviction. When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Finally, Rule 13(e) of the Tennessee Rules of Appellate Procedure provides, "findings of guilt in criminal actions whether by the trial court or jury

shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt."

In this case, Appellant was convicted of voluntary manslaughter. At the time of the shooting, manslaughter was defined as "the unlawful killing of another without malice, either express or implied, which may be voluntary upon a sudden heat, or involuntary, but in the commission of some unlawful act." Tenn. Code Ann. § 39-2-221 (1989). "[V]oluntary manslaughter is when one kills another upon a sudden heat, produced by adequate provocation without malice, and is an act of passion rather than judgment." State v. Morgan, 541 S.W.2d 385, 390 (Tenn. 1976). Furthermore, a homicide that results from mutual combat has also been recognized as voluntary manslaughter by Tennessee courts. See State v. Johnson, 909 S.W.2d 461, 464 (Tenn. Crim. App. 1995); Wright v. State, 497 S.W.2d 588, 592 (Tenn. Crim. App. 1973).

It is clear that the elements of the offense of voluntary manslaughter were proven by the State. Indeed, the evidence showed that after a car wreck, Appellant and Hicks engaged in a heated argument, Appellant and Hicks began fighting, Hicks stabbed Appellant in the arm, Appellant returned to his car and retrieved a gun, and Appellant then shot and killed Hicks. Appellant does not challenge these facts. Rather, Appellant contends that the evidence was insufficient to support his conviction because the State failed to negate his claim that he acted in self-defense.

At the time of the shooting, the applicable self-defense statute provided that a party could prevent an offense against his person by employing "resistance

sufficient to prevent the offense." Tenn. Code Ann. § 38-2-102 (1989). Further, in order to excuse a homicide on the ground of self-defense, the defendant must show that at the time of the killing he or she was acting upon a well-founded fear of death or great bodily harm, and that the actions taken were necessary in self-defense. See State v. Wilson, 556 S.W.2d 232, 234 (Tenn. 1977). The State had the burden of negating the claim that the accused acted in self-defense. See, e.g., Henley v. State, 520 S.W.2d 361, 363 (Tenn. Crim. App. 1974).[3] Whether the defendant acted in self-defense is a factual determination to be made by the jury. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). The jury obviously rejected Appellant's claim of self-defense.

Appellant contends that the State failed to introduce any evidence that contradicted his testimony that he only shot Hicks because Hicks was acting in a way that caused him to believe that Hicks was attempting to obtain a gun to shoot him. However, the State introduced Appellant's signed statement that he gave to police in which he admitted shooting Hicks after arguing and fighting with him. In this statement, Appellant did not claim that he shot Hicks in self-defense and he made no mention of any belief that Hicks was attempting to retrieve a gun to shoot him. Appellant also made no mention of firing any warning shots at Hicks. Instead, Appellant stated that he had shot Hicks and he was not sure how many times he had shot him. This statement in which Appellant made no mention of self-defense or the belief that Hicks was attempting to retrieve a gun,

---

[3]The State retains this burden under current law. See, State v. Belser, 945 S.W.2d 776 (Tenn. Crim. App. 1996).

provides a sufficient basis for a rational juror to conclude that Appellant did not act in self-defense.[4]

In summary, the evidence established that Appellant shot and killed Hicks after arguing and fighting with him about the damage to his car. Thus, we conclude that when the evidence is viewed in the light most favorable to the State, a rational jury could find beyond a reasonable doubt that Appellant had committed the offense of voluntary manslaughter. This issue has no merit.[5]

### III. COMMENT FROM THE BAILIFF

Appellant contends that the jury was prejudiced as a result of a comment from the bailiff.

The record indicates that during deliberations, the jury advised the bailiff that it had a legal question for the court. When the bailiff was asked whether one juror could go in and ask the court the question, the bailiff responded that all of

---

[4]Appellant contends that the State's introduction of pre-trial statement did not rebut his claim of self-defense because the statement was entirely consistent with his testimony at trial. While it true that the jury was entitled to conclude that the two statements were consistent, the jury was also entitled to conclude that the two statemetns were contradictory and that the pre-trial statement was the one which was worthy of belief. Indeed, the determination of whether the two statements were consistent or contradictory and whether Appellant had been untruthful when he gave either of the statements was strictly for the jury. It is well-established that "[t]he credibility of the witnesses, the weight to be given their testimony, and the recondiliation of conflicts in the evidence are matters entrusted excusively to the jury at the triers of fact." State v. Cribbs, 967 S.W.2d 773, 793 (Tenn. 1998).

[5]Appellant also contends, for the same reasons that he contends that the evidence was insufficient to support his conviction, that the trial court erred when it denied his motion for judgment of acquittal. "When the trial court is presented with a motion for judgment of acquittal, the only concern is the legal sufficiency, as opposed to the weight, of the evidence." State v. Blanton, 926 S.W.2d 953, 957 (Tenn. Crim. App. 1996) (citation omitted). "To determine whether the evidence is insufficient to sustain the conviction, the trial court must consider the evidence introduced by both parties, disregard any evidence introduced by the accused that conflicts with the evidence adduced by the State, and afford the State the strongest legitimate view of the evidence, including all reasonable inferences which may be drawn from the evidence." Id. at 957–58 (citation and internal quotations omitted). For the same reasons that we conclude that the evidence was sufficient to support Appellant's conviction, we conclude that the trial court properly denied the motion for judgment of acquittal.

the jurors must go into open court to ask the question. The bailiff was then asked what would happen if the jury could not agree on a verdict, and the bailiff responded that there was a possibility that the jury could be sequestered overnight. The bailiff then left to inform the court that the jury had a question. Five minutes later when the bailiff had gathered the jury into the court room, the jury informed the court that it had reached a verdict.

In its order denying the motion for a new trial, the trial court found that although the bailiff's comment was improper, the error was harmless. The trial court based this determination on its findings of fact that the jury had only been deliberating for forty-five minutes when the comment was made, that the comment was made one and one-half hours before the court's usual adjournment time, and that the jury already knew that it could be sequestered before the bailiff made the comment. Thus, the trial court found that the verdict was not made in response to any apprehension of overnight sequestration.

We agree with Appellant that the bailiff should not have made the comment. However, we conclude that it was harmless error. In State v. Howard Barnwell, No. 935, 1986 WL 4491 (Tenn. Crim. App. April 14, 1986), the defendant alleged that the trial court improperly influenced the jury and coerced the jury into reaching a verdict when the court informed the jury that if it could not reach a verdict, it would be sequestered until the next day. The defendant contended that because the jury returned with a verdict only forty-five minutes later, the verdict had been coerced. This Court rejected the defendant's argument and held that the verdict was not forced by threats or coercion. Id. at *8. This Court concluded that the trial court's comment was "merely a comment

upon the schedule for deliberations, not coercion to influence a hung jury." Id. This Court noted that there was no evidence that the jury had reached an impasse and could not agree on a verdict before the trial court made the comment. Id.

We conclude that in this case, as in Barnwell, the verdict was not coerced by a comment about possible sequestration. Nothing in the record indicates that the jury had reached an impasse and we agree with the trial court that the fact that the jury had only been deliberating for a relatively short time supports the inference that they had not reached an impasse. Further, contrary to Appellant's assertion, there is absolutely nothing in the record that indicates that the jury was evenly divided, or even divided at all, when the bailiff made the comment. Finally, the fact that the jury already knew about the possibility of sequestration and that they jury reached a verdict one and one-half hours before deliberations would have been adjourned indicates that the verdict was not reached in response to the comment about sequestration. Thus, we conclude that the bailiff's comment was harmless error. See Tenn. R. App. P. 36(b). This issue has no merit.

## IV. LENGTH OF SENTENCE

Appellant contends that the trial court erroneously imposed a longer sentence than he deserves.

Initially, we note that the offense in this case occurred on October 4, 1989, before the 1989 Sentencing Act went into effect on November 1, 1989. However, Appellant was tried and sentenced after the effective date of the Act on

September 25, 1990. Thus, "the trial court was required to calculate the proper sentence under both the 1982 and the 1989 sentencing acts and then impose the least severe sentence." State v. Carico, 968 S.W.2d 280, 286 (Tenn. 1998). Under the 1982 Sentencing Act, the sentence for a Range I offender convicted of voluntary manslaughter was between two and six years. Tenn. Code Ann. §§ 39-2-222, 40-35-109(a) (1982). Under the 1989 Sentencing Act, the pre-1989 version of voluntary manslaughter is considered to be a Class C felony. Tenn. Code Ann. § 40-35-118 (1989). The sentence for a Range I offender convicted of a Class C felony is between three and six years. Tenn Code Ann. § 40-35-112(a)(3) (1989).

Appellant contends that he is entitled to a new sentencing hearing because the record does not indicate whether the trial court sentenced him under the 1982 or 1989 Sentencing Act and does not indicate what enhancement or mitigating factors the court applied to his sentence.[6] However, Appellant had the duty to prepare a record which conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues which form the basis of his appeal. State v. Gibson, 973 S.W.2d 231, 244 (Tenn. Crim. App. 1997); State v. Griffis; 964 S.W.2d 577, 592 (Tenn. Crim. App. 1997); State v. Smith, 891 S.W.2d 922, 932 (Tenn. Crim. App. 1994). When the record is incomplete, or does not contain the proceedings relevant to an issue, this Court is precluded from considering the issue. Gibson, 973 S.W.2d at 244; Griffis; 964 S.W.2d at 592–93; Smith, 891 S.W.2d at 932. Furthermore, this Court must conclusively

---

[6]In the amended statement of the evidence, Appellant states that the trial court apparently gave mitigating weight to Appellant's age at the time of the offense and to Appellant's contention that he was acting under strong provocation when he committed the offense. However, the amended statement of the evidence contains no information about what enhancement factors were applied to Appellant's sentence.

presume that the ruling of the trial court was correct in all particulars. Gibson, 973 S.W.2d at 244; Smith, 891 S.W.2d at 932. In this case, Appellant has failed to fulfill his duty of preparing a record that is a fair, accurate and complete account of what transpired in the trial court with respect to sentencing.[7] Therefore, this Court must presume that the trial court's imposition of a five year sentence was correct. See Gibson, 973 S.W.2d at 244; Smith, 891 S.W.2d at 932. This issue has no merit.

## V. DENIAL OF PROBATION

Appellant contends that the trial court erred when it failed to impose probation.[8]

Initially, we note that Appellant was eligible for probation under the 1982 Sentencing Act because he received a sentence of ten years or less and he was not convicted of certain enumerated offenses. See Tenn. Code Ann. § 40-35-303(a) (1982). Appellant was also eligible for probation under the 1989 Sentencing Act because he received a sentence of eight years or less and he

---

[7]Appellant contends that he should not be penalized for failure to prepare a complete record because the tapes of his trial, the hearing on his motion for a new trial, and the sentencing hearing were lost through no fault of his own. However, the record indicates that after Appellant filed notice of appeal on October 22, 1990, no effort was made to obtain transcripts for approximately seven to eight years while he remained free on bond. In fact, in the affidavit of the court reporter who was at Appellant's trial, the hearing on the motion for new trial, and the sentencing hearing, the court reporter stated that she has no record or recollection of the transcripts ever having been ordered until late 1997 or early 1998. "When the appellant is unable to prepare or have prepared a transcript of the evidence and proceedings, the burden is on the appellant to show . . . [his or her] inability to prepare a transcript, the reasons for the inability, and that the inability was brought about by matters outside . . . [his or her] control . . . ." State v. Rhoden, 739 S.W.2d 6, 14 (Tenn. Crim. App. 1987) (citation and internal quotations omitted). Having waited for seven to eight years while free on bond before requesting the transcripts, Appellant cannot now claim that he is without fault in failing to have a complete record prepared.

[8]Although Appellant's statement of the issue refers to alternative sentencing, the subsequent argument and citation to authorities relates only to the denial of probation. Our resolution of this issue is the same regardless of the distinction between probation and the other forms of alternative sentencing.

was not convicted of certain enumerated offenses.  <u>See</u> Tenn. Code Ann. § 40-35-303(a) (1989).  In addition, the trial court was required to consider probation as an alternative to confinement under both the 1982 and 1989 Sentencing Acts.  <u>See</u> Tenn. Code Ann. §§ 40-35-303(b) (1982), 40-35-303(b) (1989).

Appellant contends that he is entitled to a new sentencing hearing because the record does not indicate whether the trial court considered probation and if it did, what factors it relied on in denying probation.  However, as previously stated, Appellant had the duty to prepare a record which conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues on appeal. <u>Gibson</u>, 973 S.W.2d at 244; <u>Griffis</u>; 964 S.W.2d at 592; <u>Smith</u>, 891 S.W.2d at 932.  Because Appellant has failed to fulfil this duty, this Court is precluded from considering this issue and we must conclusively presume that the trial court properly denied probation. <u>See</u> <u>Gibson</u>, 973 S.W.2d at 244; <u>Smith</u>, 891 S.W.2d at 932.  This issue has no merit.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
DAVID G. HAYES, JUDGE

_____
JAMES CURWOOD WITT, JR., JUDGE