# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 11, 2011

## STATE OF TENNESSEE v. JOSEPH JOHN BORGER

**Direct Appeal from the Circuit Court for Marshall County**
**No. 2010-CR-38     Robert Crigler, Judge**

---

**No. M2010-01910-CCA-R3-CD - Filed February 28, 2011**

---

The Defendant, Joseph John Borger, pled guilty to multiple offenses stemming from his driving while intoxicated, and the trial court sentenced him as a Range II Offender to an effective sentence of seven years. On appeal, the Defendant contends that his sentence is excessive. After a thorough review of the record and applicable authorities, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee (on appeal) and Chris Collins, Lewisburg, Tennessee (at hearing and sentencing) for the Appellant, Joseph John Borger.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Chuck Crawford, District Attorney General; Chris Collins, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from a stop of the Defendant by police on March 12, 2010, after which officers noticed that he was intoxicated. The Defendant pled guilty to the following offenses: driving after being declared an Habitual Motor Vehicle Offender ("HMVO"), DUI sixth offense, violation of the implied consent law, driving on a revoked license second offense, violation of the financial responsibility law, violation of the open container law, and violation of the seat belt law. At the guilty plea hearing, the State summarized the facts

supporting the guilty plea submission:

On or about March 12th, 2010, patrolman Sanders witnessed a silver Nissan ultimately traveling on 5th Avenue North. The driver of the vehicle, herein [the Defendant], was not wearing a seatbelt. The vehicle crossed the center line on three separate times from the intersection of 5th to Ellington Parkway. At the K and S Market the officer came into contact with [The Defendant].

[The Defendant] then had a strong odor of alcoholic beverage coming from his person. He asked if he had consumed any alcohol. The [D]efendant . . . stated that he had been drinking all day.

His words were slurred and his eyes were bloodshot.

[The officer] asked [the Defendant] to exit the vehicle[,] . . . [w]hile having to use the door to steady himself[.] [The officer] asked [the Defendant] to perform a field sobriety test to determine if he was intoxicated. He refused all tests whatsoever and . . . according to the officer, said . . . "to take him to jail".

A check of the driver's license showed [the Defendant] was on revoked status. He was placed under arrest and asked to submit to a chemical test to show the content of the alcohol of his blood.

After refusing that, the patrolman found three empty 40-ounce bottles of beer in plain view in the passenger side of the floorboard, as such the defendant was charged with driving under the influence sixth offense with his prior record:

One offense in Rutherford County in '95; second offense in '98 in Rutherford County; third offense in '99, Rutherford County; fourth offense in Rutherford County 2000; and fifth offense in Rutherford County in 2002.

He was also charged with violation of implied consent and issued citations for no proof of insurance, seatbelt and the open container law.

The Defendant pled guilty and agreed to allow the trial court to determine the length and manner of his sentences. The following evidence was presented during the Defendant's sentencing hearing: The State entered the facts as announced at the sentencing hearing and also offered the presentence investigation report. The presentence report showed the

Defendant had previously been convicted of the following offenses: two counts of public intoxication, two counts of domestic violence, assault, aggravated criminal trespass, evading arrest, DUI on five separate occasions, driving on a revoked or suspended license on five separate occasions, and resisting arrest. As a result of his driving offenses, the Defendant was declared an HMVO on November 12, 2002. The State also entered certified copies of the Defendant's convictions for five prior DUI convictions and the order declaring the Defendant an HMVO.

Chris Hill from the Board of Probation and Parole testified that he prepared the presentence report. As part of Hill's investigation, he interviewed the Defendant, who told Hill that this incident was the Defendant's fault and the result of a "stupid mistake." Hill agreed that the report indicated that the Defendant had five previous convictions for DUI and that the Defendant had a probated sentence revoked in 2005. The Defendant told Hill that he had received his GED from high school and that he had an alcohol problem, drinking a 12-pack of beer daily, for which he wanted treatment. The Defendant admitted past cocaine, "acid," and marijuana usage but said he was not currently using those drugs.

Hill testified that he could not verify much of the Defendant's work history, but he was able to verify that he had been fired from Burger King for being tardy to work. Hill agreed the report indicated the Defendant was an HMVO and that, despite this, the Defendant owned a car. The Defendant told him that his girlfriend drove his car and that he himself did not drive the car.

On cross-examination, Hill agreed that the Defendant had not had a driving-related charge since 2002.

Based upon this evidence, the trial court sentenced the Defendant as a Range II offender to three years and six months each for the Defendant's convictions for DUI, sixth offense, and violation of the HMVO statute, and it ordered those sentences to run consecutively. The trial court ordered the remainder of the sentences for the misdemeanor convictions to run concurrently to those two sentences, for a total effective sentence of seven years in the Tennessee Department of Correction.

It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that his sentence is excessive given the facts and circumstances of this case. He notes that he was "polite to the probation officer preparing his presentence report" and was "extremely forthright . . . acknowledging heavy beer

consumption and past drug use." The Defendant states that he wants to attend a treatment program for his alcohol abuse and that he cannot do so while incarcerated. He states that a more "productive use of the State's criminal court resources" would be to offer him in-patient rehabilitation services rather than incarceration. The State responds that the trial court's decision to sentence the Defendant to a substantial period of incarceration was fully justified, considering the Defendant's criminal history and past failures at rehabilitation.

When a defendant challenges the length, range, or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2006). This presumption, however, is conditioned upon the affirmative showing in the record that the trial court properly sentenced the defendant. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). As the Sentencing Commission Comments to this section note, the burden is on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. If the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result was preferred. T.C.A. § 40-35-103 (2006), *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In conducting a de novo review of a sentence, we must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2009); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The Criminal Sentencing Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence. Under the Act, a trial court may impose a sentence within the applicable range as long as the imposed sentence is

consistent with the Act's purposes and principles. T.C.A. § 40-35-210(c)(2) and (d) (2006); *see State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008).

In order to ensure "fair and consistent sentencing," the trial court must "place on the record" what, if any, enhancement and mitigating factors it considered as well as its "reasons for the sentence." T.C.A. § 40-35-210(e). Before the 2005 amendments to the Sentencing Act, both the State and a defendant could appeal the manner in which a trial court weighed enhancement and mitigating factors it found to apply to the defendant. T.C.A. § 40-35-401(b)(2) (2003). The 2005 amendments deleted as grounds for appeal, however, a claim that the trial court did not properly weigh the enhancement and mitigating factors. *See* 2005 Tenn. Pub. Acts ch. 353, §§ 8-9. In summary, although this Court cannot review a trial court's weighing of enhancement factors, we can review the trial court's application of those enhancement factors. T.C.A. § 40-35-401(d) (2006); *see Carter*, 254 S.W.3d at 343.

In the case under submission, when sentencing the Defendant, the trial court stated the following:

> In making [my sentencing] decision I am relying on the proof adduced at the plea acceptance hearing and at this sentencing hearing; the Presentence Report, the principles of sentencing and arguments as to sentencing alternatives; the nature and characteristics of the criminal conduct; the evidence about statutory mitigating and enhancing factors. And the [D]efendants' potential or lack of potential for rehabilitation and treatment.

> It does appear the [D]efendant is a Range II offender, while the two felonies the State relies on were pled out the same day, they do have different offense dates: One, July 20, '02 and one May 25th, '92, so therefore they do not merge and the Court finds him to be a Range II multiple offender.

> Count 1, driving after having been declared an Habitual Offender is an E felony, so his range on that would be 2 to 4.

> Count 2 is DUI 6th, an E. His range on that would be 2 to 4.

> Count 3, the implied consent is an A misdemeanor . . . carries up to 11 months and 29 days.

> The revoked DL second in Count 4 merges with the Habitual Motor Offender.

Open container is a C misdemeanor. Caries up to 30 days and up to a $50 fine.

[Count 6] Financial responsibility . . . has only one punishment and that is $100 fine and loss of license which the Court will impose right here and now.

Count 7, a seatbelt violation is a C misdemeanor.

The trial court then found applicable to the Defendant's sentence enhancement factor (1), that the defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; and enhancement factor (8), that the Defendant, before sentencing, failed to comply with the conditions of a sentence involving release into the community. *See* T.C.A. § 40-35-114 (1) and (8) (2009). The trial court placed "great weight" on its finding of these two enhancement factors.

In support of enhancement factor (1) the trial court recited the Defendant's numerous prior convictions and his sentences for those convictions, and the two felonies that classified him as a Range II offender: a felony DUI, fourth offense, conviction, which occurred on May 25, 2002, for which the Defendant received a sentence of eighteen months; and a felony evading arrest conviction, which occurred on July 20, 2002, for which the Defendant received a sentence of two years.

In support of enhancement factor (8), the trial court noted that, while the Defendant was on probation for his evading arrest and DUI, fourth offense, convictions, a probation warrant was issued when he was subsequently arrested for domestic assault. His probation was partially revoked, and he was ordered to serve an additional 150 days in incarceration. A second revocation warrant was issued when he was again convicted of domestic assault, and, after his probation was revoked, he was ordered to serve the remainder of his sentence in incarceration. The Defendant served three-and-a-half years, beginning August 22, 2005. The trial court noted that this was, perhaps, the reason he had a gap in driving-related offenses before his arrest in this case.

Based upon these considerations, the trial court sentenced the Defendant to three years and six months for the DUI, sixth offense, conviction and for his violation of the HMVO statute. The court ordered him to serve: eleven months and twenty-nine days, at 75%, for violation of the implied consent law; thirty days, at 75%, for violation of the open container law; and thirty days, at 75%, for the violation of the seatbelt law. The court ordered the two three years and six months sentences to run consecutively to each other, with the other sentences running concurrently with those, for a total effective sentence of seven years.

The record fully supports the trial court's judgment. The trial court recognized the Defendant's "unfortunate" and "terrible" alcohol problem, but also indicated the need to protect society. The trial court properly found the Defendant was a Range II offender, properly applied the two enhancement factors, and properly sentenced the Defendant within his range. We conclude that the Defendant's sentence is consistent with the Act's purposes and principles. *See* T.C.A. § 40-35-210(c)(2) and (d); *Carter*, 254 S.W.3d at 343. He is not, therefore, entitled to relief on this issue.

## II. Conclusion

After a thorough review of the record and the applicable law, we conclude the record supports the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE