IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 14, 2012

## STATE OF TENNESSEE v. LESLIE JACQUINTE FETTERS

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 41000628      John H. Gasaway, Judge**

───────────────────

**No. M2012-00019-CCA-R3-CD - Filed September 27, 2012**

───────────────────

The Defendant, Leslie Jacquinte Fetters, pled guilty to two counts of aggravated robbery and agreed to allow the trial court to determine his sentence. The plea agreement was based upon the Defendant being sentenced as a Range I offender to concurrent sentences. After a hearing, the trial court sentenced the Defendant to eleven years, at 30%, for each conviction and ordered that the sentences run concurrently as contemplated by the plea agreement. On appeal, the Defendant contends that his sentence is excessive. After a thorough review of the record and relevant authorities, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ. joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Leslie Jacquinte Fetters.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; John W. Carney, Jr., District Attorney General, and John E. Finklea, Assistant District Attorney General for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's participation in two aggravated robberies, one at the 48 Market and one at the Excell Market, both of which were located in Montgomery County. For these offenses, a Montgomery County grand jury indicted the Defendant for two counts of aggravated robbery, a Class B felony. The State filed a notice of its intent to request that the Defendant be sentenced as a Range II, multiple offender. The Defendant

then entered into a plea agreement with the State, in which he pled of guilty to both counts of the indictment, with the trial court to impose concurrent, Range I sentences following a sentencing hearing. The plea agreement also provided that his sentences in this case would run "concurrent to convictions in Rutherford County." A transcript of the guilty plea hearing is not included in the record.

The trial court held a sentencing hearing, during which the parties presented the following evidence: The Defendant testified that, at the time of the robberies, he had just lost the job that he had held for fifteen years. The Defendant said that losing his job put a strain on his family, and it caused his family to "split up." The splitting of his family affected the Defendant "a great deal" and ultimately led him to use alcohol and abuse prescription narcotics. The Defendant explained that he had been prescribed Lortab and Hydrocodone during his treatment for cancer and also for injuries he suffered during a vehicle accident. He said that, once he started drinking, he could not remember if he had taken his prescribed medication. He would then take additional doses, which led to his abuse of the prescription medication. He described himself, at the time, as "distraught." The Defendant testified that the combination of these factors led him to make a "terrible, terrible choice."

The Defendant said that the family he lost included Shirley Bradford, who planned to testify against him at his trial. He said that she was working at the Excell Market at the time that he robbed it.

The Defendant testified that, around the time of the robbery, he met another woman, Mary Reynolds, whom he later married. He agreed that she was his co-defendant in the robberies, and he said that he "greatly regret[ted] . . . ever involving her in anything of this nature." The Defendant said that he was "ashamed."

The Defendant agreed that he committed the robberies in this case using a Halloween mask and a revolver. He said that the revolver was not a working gun, explaining that it could not be cocked or fired, and it did not contain the cylinder pin. He further stated that the gun was not loaded at the time of the robbery. He explained that he committed these robberies with a non-working gun because he did not want to hurt anyone.

The Defendant agreed that he was arrested in Rutherford County for additional robberies he committed, and, after his arrest, he was charged with the Montgomery County robberies. While he was incarcerated, he enrolled in the Therapeutic Community, which was an intensive residential drug and alcohol abuse program. He said this program "enlightened" him and "opened [his] eyes" to the kind of thinking that led him to abuse drugs and alcohol. He said his drug abuse was based upon his fears of failure and rejection. The Defendant testified that, with the help of what he learned in this program, he had been able to "mend the

fences" in his family. He said he was proud that he made it through the program and that he intended to participate in similar programs when released from incarceration.

The Defendant testified that he put himself in prison, and he did not blame anyone but himself. He said that he chose to make the best use of his time in prison and tried to understand what brought him to the point of committing criminal offenses. He expressed his hope that the lessons that he had learned while incarcerated could forever remind him of what brought him to this point.

The Defendant said that he was "absolutely disgusted" by his actions. He testified that he let his entire family down when, previously, he had always been someone they could rely upon. He said that it was a "serious struggle" to forgive himself for what he had done to these victims.

During cross-examination, the Defendant conceded that, approximately one month before the robberies, he was sentenced to probation for committing theft of property valued over one thousand dollars in Dickson County. He then committed a burglary, two other robberies, in Rutherford County, and then the two aggravated robberies that were the subject of this case. The Defendant denied that each of the robberies was "well thought out." He conceded that he picked the time and place of each of the robberies but said it was not a "long thought out process to pick it." The Defendant testified that he had received a six-year sentence of incarceration for the two Rutherford County robberies.

The Defendant testified that three people were present at the time of the robbery at the Excell Market, the first robbery he committed: the store clerk and two women, one of whom was in her twenties and one of whom was in her forties. The Defendant said he felt "[s]ick with nerves" after he committed the robbery. He said this was exacerbated by the fact that Shirley Bradley, his ex-wife, was present and working when he walked into the market to rob it. Despite the Defendant's physical illness following the Excell Market robbery, he decided to commit a second robbery, this one in Robertson County. He said that, after the second robbery, he felt sick but "not as bad."

The third robbery the Defendant committed, the one at the 48 Market, he committed with Reynolds. He said he originally went to the market to collect his unemployment check, which was his only means of income. He committed the robbery after learning that his check was not at the unemployment office and because he had no money for gas to get back home. The Defendant said that, after this robbery, he felt "scared," not knowing how long he was going to keep committing robberies. He said that he knew that he was going to get hurt or possibly hurt someone else in a struggle. The Defendant then committed a fourth robbery.

The Defendant agreed that, each time he committed a robbery, he did it at a market that was located "way out in the county," where there would be no one around and he would not have a hard time getting away. He agreed that the gun he carried scared each of the people that he robbed.

The Defendant then offered a statement of allocution, in which he expressed that he was "ashamed" of what he had done. He said that he did not fully understand the effect his actions would have on others. He told the trial court that he was a different man and that he wanted to help others.

Based upon this evidence, and the arguments of counsel, the trial court sentenced the Defendant. The trial court first noted that the Defendant was a Range I offender, as agreed in the plea agreement, making the applicable sentencing range eight to twelve years for each of his Class B felony convictions. The trial court sentenced the Defendant to serve eleven years for each conviction and ordered that the sentences run concurrently with each other and concurrently with the Defendant's sentences for the Rutherford County robberies.

## II. Analysis

On appeal, the Defendant contends that his sentence is excessive. He asserts that the trial court did not consider the mitigating factor of his remorse, which is a valid sentencing consideration. The State counters first that the Defendant has waived his sentencing claims by failing to include a transcript of the guilty plea submission hearing in the appellate record. The State further contends that the trial court properly sentenced the Defendant.

We first address the State's assertion that the Defendant has waived our review for failure to include the guilty plea submission hearing transcript. It is the defendant's duty to compile a complete record for appeal. Tenn. R. App. P. 24(b). A panel of this Court recently held that the guilty plea hearing transcript is vital to a de novo review of sentencing and in the absence of an adequate record, we will presume the trial court's rulings were supported by sufficient evidence. *See State v. Christine Caudle*, No. M2010-01172-CCA-R3-CD, 2011 WL 6152286, at *4 (Tenn. Crim. App., at Nashville, Dec. 8, 2011), *perm. app. granted* (Tenn. April 12, 2012). Another panel of this Court, however, concluded that, despite the absence of the guilty plea submission hearing transcript, the record was adequate to afford appellate review. *State v. Anna M. Steward*, No. E2010-01918-CCA-R3-CD, 2011 WL 4346659, at *5 (Tenn. Crim. App., at Knoxville, Sept. 19, 2011), *no Tenn. R. App. P. 11 application filed*. Based upon the specific facts of this case, we conclude that sufficient testimony regarding the nature of the Defendant's offenses was adduced at the sentencing hearing to allow this Court to evaluate the propriety of his sentences.

When a defendant challenges the length, range or manner of service of a sentence, this Court must conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2006). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, *Sentencing Comm'n Cmts.* (2006). This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the Sentencing Act, the appellate court may not disturb the sentence even if a different result was preferred. T.C.A. § 40-35-103 (2006); *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

The Tennessee Criminal Sentencing Reform Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence. Under the Act, a trial court may impose a sentence within the applicable range as long as the imposed sentence is consistent with the Act's purposes and principles. T.C.A. § 40-35-210(c)(2), (d) (2006); *see State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). The Sentencing Act requires this Court, in conducting its *de novo* review, to consider all mitigating factors applicable to the defendant. *See* T.C.A. § 40-35-210 (2006); *State v. Herbert H. Foster*, W2007-02636-CCA-R3-CD, 2009 WL 275790, at *4 (Tenn. Crim. App., at Jackson, Feb. 3, 2009), *no Tenn. R. App. P. 11 application filed*. Section 40-35-113 contains a non-exclusive list of mitigating factors that a trial court may apply to a defendant's sentence "[if] appropriate for the offense." T.C.A. § 40-35-113 (2006). We, however, recognize that a trial court's weighing of applicable mitigating factors is "left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. The burden of proving applicable mitigating factors rests upon the defendant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at * 6 (Tenn. Crim. App., at Knoxville, Sept. 18, 1995), *perm. app. denied* (Tenn. Feb. 5, 1996).

Before the 2005 amendments to the Sentencing Act, both the State and a defendant could appeal the manner in which a trial court weighed enhancement and mitigating factors it found to apply to the defendant. T.C.A. § 40-35-401(b)(2) (2004). The 2005 amendments, however, deleted, as grounds for appeal, a claim that the trial court did not properly weigh the enhancement and mitigating factors. *See* 2005 Tenn. Pub. Acts ch. 353, §§ 8, 9. "The appellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence."

*Carter*, 254 S.W.3d at 345-46. In summary, although this Court cannot review a trial court's weighing of mitigating factors, we can review the trial court's application of those mitigating factors. T.C.A. § 40-35-401(d) (2006); *Carter*, 254 S.W.3d at 343-44.

The Defendant in this case appeals only the trial court's failure to appropriately consider his remorse as a mitigating factor. *See* T.C.A. § 40-35-113(13) (2006). This Court has previously stated that genuine remorse may be entitled to consideration under mitigating factor (13). *See State v. Williamson*, 919 S.W.2d 69, 83 (Tenn. Crim. App. 1995). Regarding remorse, this Court has previously stated that "[a]lthough an 'expression of remorse may be a solid basis for a successful rehabilitation, there is no requirement that [remorse actually be] included among the mitigating factors set out in the catchall provision of Tenn. Code Ann. § 40-35-113(13).'" *State v. Augusto Oviedo*, No. W2000-01003-CCA-R3-CD, 2001 WL 846052, at *6 (Tenn. Crim. App., at Jackson, July 20, 2001) (quoting *State v. Barry Waters Rogers*, No. M1999-01358-CCA-R3-CD, 2000 WL 1336488, at *6 (Tenn. Crim. App., at Nashville, Sept. 15, 2000), *perm. to app. dismissed*, (Tenn. Jan. 12, 2001)), *perm. app. denied* (Tenn. May 7, 2001). In addition, this Court has previously concluded:

> Genuine, sincere remorse is a proper mitigating factor. While remorse is a relevant concern, the mere speaking of remorseful words or a genuflection in the direction of remorse will not earn the accused a sentence reduction. The trial judge saw the defendant, listened to her testimony, and observed her demeanor and concluded that this mitigating factor did not apply.

*State v. Patricia Spencer*, No. W1999-00030-CCA-R3-CD, 2000 WL 279696, at *4 (Tenn. Crim. App., at Jackson, Mar. 6, 2000) (internal quotations and citations omitted).

In this case, while sentencing the Defendant, the trial court stated as follows:

[T]he Court has considered the evidence which has been received at this sentencing hearing. . . .

> The Court has considered not only that documentary evidence but also the testimonial evidence given by [the Defendant], he being the only witness that testified at the sentencing hearing.

> . . . .

> The Court has also considered the nature and characteristics of the criminal conduct involved. As I read into the record [the Defendant's] own

statement as to what he did . . . and I've considered that along with the evidence that he gave from the witness stand . . . .

Next, the Court has considered the evidence and information offered by the parties on mitigating and enhancement factors. . . .

. . . .

And the Court has also considered the statement made by [the Defendant] in his own behalf when he addressed the Court and gave his unsworn statement.

The record indicates that the trial court considered, in detail, the respective enhancement and mitigating factors presented by the parties. The trial court was in the best position to determine the Defendant's attitude and demeanor, and the trial court's comments indicate consideration of the Defendant's statement, in which the Defendant expressed remorse for his actions. As established by the 2005 amendments to the Sentencing Act, this Court may not review whether the trial court properly weighed the applicable mitigating factors; rather, this Court is confined to reviewing only the trial court's application of the mitigating factors. *See* 2005 Tenn. Pub. Acts ch. 353, §§ 8, 9; *Carter*, 254 S.W.3d at 343-45. As a result, we leave it to "the trial court's sound discretion" to weigh the applicable mitigating factors in a case. *Carter*, 254 S.W.3d at 345. In this case, we conclude that the trial court did not err by not specifically stating the extent to which it considered the Defendant's statement of remorse as a mitigating factor. The record supports the Defendant's sentence, and he is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we conclude that the trial court did not err when sentencing the Defendant. We, therefore, affirm the Defendant's sentences.

_____
ROBERT W. WEDEMEYER, JUDGE